EXHIBIT "1"

PAGE – 2

## SUPPLEMENTAL AND SECOND AMENDED COMPLAINT[1]

### Background Allegations

1.     Plaintiff Shamsidin Ali, (A/K/A Robert Saunders) is a citizen of the United States and a Resident of this judicial district.

2.     Plaintiff has been incarcerated at the Delaware Correctional Center (DCC) in Smyrna, Delaware since June 10, 2005.

3.     Defendant, Delaware Department of Corrections (DOC) operates the DCC.

4.     Defendant, Stanley Taylor is commissioner of DOC.

5.     Defendant, Rick Kearney is Warden of the Sussex Correctional Institution (SCI).

6.     Defendant, Thomas Carroll is Warden of DCC.

7.     Defendant, Mike Deloy is Warden of Sussex Correctional Institution (SCI).

8.     Defendant, Earl Messick is Staff Lieutenant at Sussex Correctional Institution (SCI).

---

[1] This Amended Complaint totally rewrites the original Complaint.

PAGE – 3

9.    Defendant, Joseph Johnson is the Staff Lieutentant at Sussex Correctional Institution (SCI).

10.    Defendant, Anthony Rendina is Director of Classification/Special Programs DOC.

11.    Defendant, Paul Howard is Adult Bureau Chief DOC.

12    Defendant, C. Segars is Supervisor of Building 21 at DOC.

13.    Defendant, Fisher is Mailroom Supervisor at Sussex Correctional Institution (SCI).

14.    Defendant, Jane Morgan is Corporal Supervisor of the Property Department at DCC.

15.    Defendant, Correctional Medical Systems is the medical contractor for DOC and provides medical treatment for its inmates.

16.    This action arises under the FIRST, EIGHTH and FOURTEENTH Amendments of the United States Constitution, 42 U.S.C. Section 1983 and 12132, 29 U.S.C. Section 794 and the laws of the State of Delaware. This court has jurisdiction of the action under 28 U.S.C. Sections 1331, 1343 and 1367. Venue lies in this district pursuant to 28 U.S.C. 1391.


## COUNT I

17.    Plaintiff incorporates herein by reference paragraph 1 through 16 hereof as if set forth in length.

18.    While incarcerated at Sussex Correctional Institution, to be referred to as SCI, plaintiff was subjected to illegal censoring of legal and personal mail, minus court

PAGE - 4

order or sanction imposed as result of disciplinary action. Plaintiffs outgoing & incoming personal and legal mail subjected to aforementioned, and out of plaintiffs presence.

19.    While incarcerated at SCI as a result of filing a formal complaint with R. Thomas Wagner, State Auditor, and submitting evidence of illegal expenditures from "Inmate Commissary Fund" subjected to retaliatory actions. The plaintiff also filed complaints in reference to inmates, including plaintiff, being exposed to asbestos for numerous years. An attorney, Jennifer Kate Aaronson, Esquire, visited the plaintiff regarding this matter. Plaintiff was also contacted by Esteban Parra, Reporter for the News Journal, concerning inmate health care. Plaintiff having served as HIV/AIDS & HepC Peer Educator over 13 years and AIDS caregiver expressed concern over growing number of deaths at SCI. There were six (6) deaths in the course of three years.

20.    Joseph A. Hurley, Esquire expressed to Al Mascitti, of the News Journal, concern about health issues and the number of inmate deaths throughout state, and recommended contacting plaintiff. Plaintiff was contacted by Esteban Parra, reporter, and completed forms concerning interviewing and photographing.

21.    Defendants at SCI read incoming/outgoing mail to R. Thomas Wagner -- State Auditor, Jennifer Kate Aaronson, Esquire and Esteban Parra, News Journal Reporter. Mail arriving at each of aforementioned, had been opened and re-taped close. These actions by defendants at SCI have been in practice since June 2004. Again, this process of opening and re-taping all outgoing/incoming mail was done out of plaintiffs presence.

22.    Plaintiffs constantly filed grievances and complaints with outside parties concerning lack of black school teachers and one black counselor; the double-standards applied to black versus caucasian inmates in classification and disciplinary actions; the racism directed at plaintiff and other Muslims in application of their religion. All complaints stated in this paragraph have been filed with Sen. Karen Peterson, U.S. Civil Rights Commission, Civil Rights Division of the U.S. Department of Justice – Washington, D.C., U.S. Department of Justice – Delaware and throughout the Department of Corrections.

23.    On June 9, 2005 Lt. Jim Hollis and Donna Furhman, Counselor, informed the plaintiff that he had been re-classified and that he had outlived the program needs at SCI. Hence, the plaintiff was transferred June 10, 2005. Ordinarily, when inmates are classified to another facility after initial classification, the process proceeds through the Multi Disciplinary Team (MDT), then to the Institution Classification Committee (ICC)

PAGE - 5

and finally, the Institution Board Classifications Committee (IBCC). In the plaintiffs case the process was handled in reverse, and the MDT (Lt. Jim Hollis and Donna Furhman) ignored the plaintiffs medical problems, which to be addressed in Departments Salient Classificaton Score Factors; Override Factors: "Physical/Medical limitation that could affect housing placement." It was known by aforementioned parties, plaintiff suffered with following medical problems; severe case of high blood pressure (takes ten medications daily), degenerate disc disease (walk with assistance of case for over 15 years), cane prescribed by Dr. DeShuttle as result of MIR of back/legs. Plaintiff made members of MDT aware of physical problems.

24.    Plaintiff is entitled to punitive damages for defendants at SCI illegally opening and censoring all (legal/personal) outgoing and incoming mail. Failure by classification to take into account plaintiff's medical conditions, according to Department Classification Salient Score Factors.

## COUNT II

25.    Plaintiff incorporates herein by reference paragraphs 1 through 24 hereof as if set forth at length.

26.    DOC receives Federal Financial Assistance.

27.    Plaintiff has physical impairment which substantially limits one or more of his major life activities. He suffers with degenerative disc disease, chronic lesions in left basal ganglia and left thalamus of the brain, severe blood pressure problems, suffered silent stroke, heart murmur, Achilles tendon problem and severe headaches.

28.    Plaintiff under care of Dr. David Sopa, Orthepedic and Dr. Maria Ionita, Neurologist, both located in Lewes, Delaware. Plaintiff has appointment scheduled late May or early June with Dr. Ionita. As result of noted complications, warmness in left elbow and limited mobility in left arm, Dr. Roberta Burn, of the Sussex Correctional Institution, wrote an order for plaintiff to be taken back to Dr. David Sopa who performed surgery. Dr. Burns, also stated for Dr. Sopa to utilize his x-ray machine as result of possible problem with same at SCI, which possibly caused plaintiff's previous x-ray to be incorrectly read at SCI.

PAGE - 6

29.    Plaintiff is qualified individual with disabilities within the meaning of Americans With Disabilities Act, 42 U.S.C. Section 12132 and the Rehabilitation Act, 29 U.S.C. Section 794.

30.    DCC officials have refused to provide reasonable accommodations; plaintiff is deprived of cane, since June 10, 2005 served ice cold diet tray three times per day, assigned to second floor, which requires walking distance equal to that of city block, and secured by waist chain and shackles for visits and interviews.

31.    Since arriving at DCC, submitted eight (8) sick call requests, two (2) medical emergency grievances to Warden Thomas Carroll concerning series of medical problems all of which have gone ignored.

32.    DCC Officials have refused to assist plaintiff with walking through facility to reach destinations and refuse to provide a cane despite the plaintiff's constant pain

33.    DCC Officials keep plaintiff locked in cell 24 hours per day, permitted out of cell 3 hours per week for exercise, shower and clean room. Plaintiff housed with inmates with severe mental disorders and history of violent behavior towards fellow inmates. DCC has failed to make reasonable accommodations for plaintiff's illnesses.

34.    Defendants at DCC failure to address plaintiff's medical and physical disabilities violate the Americans with Disabilities Act and Eighth Amendment of the United States Constitution.

35.    Plaintiff is entitled to monetary damages from DOC to compensate him for its failure to make reasonable accommodations for his physical disabilities and denial of access to sick-call. In addition, the plaintiff is entitled to injunctive relief preventing further violations of his rights under the Americans with Disabilities Act and the Eighth Amendment of the United States Constitution.

## COUNT III

36.    Plaintiff incorporates herein by reference paragraph 1 through 35 hereto as is set forth at length

PAGE - 7

37.   On September 24, 2004 plaintiff filed the original Complaint in this action. It complained of his repeatedly having legal and outgoing personal mail censored. This also was an issue for Masjid Ullah, Inc.'s outgoing/incoming religious materials. By the Complaint sought compensatory damages.

38.   The Complaint named Warden Rick Kearney, Deputy Warden Mike Deloy, S/Lt. Earl Messick, S/Lt. Joseph Johnson and Cpl. Fisher.

39.   In concert as a result of plaintiff complaining about racial disparities in inmate treatment, being exposed to asbestos, improper medical care, which lead to a number of inmate deaths, improper expenditures from inmate commissary account and religious issues, the defendants infringed upon plaintiff's First Amendment Rights

40.   Defendants Kearney, Deloy, Messick, Johnson and Fisher are jointly liable because of knowledge of campaign of infringement upon plaintiff's First Amendment Right.

## COUNT IV

41.   Plaintiff incorporates herein by reference paragraph 1 through 40 hereof as if set forth at length.

42.   Plaintiff has written Warden Carroll, Captain C. Segars, Anthony Rendina, Paul Howard and Commissioner Taylor concerning lack of medical attention, lack of follow-up on medical appointments, address of cold diets, improper housing due to physical disabilities and being subjected to cruel and unusual punishment. The defendants, failed to address any issues presented, including Defendant Morgan rifling through plaintiff's legal and personal items, selecting which legal papers, books, and research materials she deemed proper. The failure of defendants Taylor and Carroll to demand Correctional Medical Systems address plaintiff's medical needs.

43.   Plaintiff filed series of grievances with Correctional Medical Systems for failure to address sick-call requests.

PAGE - 8

## WHEREFORE, PLAINTIFF PRAYS THAT:

1.     This Court preliminarily and permanently enjoins defendants, their agents and employees from denying plaintiff medical attention and directs the defendants to make accommodations for plaintiff's physical disabilities;

2.     This Court preliminarily and permanently require defendants to provide scheduled medical appointments with Dr. David Sopa, Orthopedic and Dr. Maria Ionita, Neurologist;

3.     This Court instruct defendants Taylor, Carroll and Morgan make plaintiff legal/personal items available in order to secure legal and other personal items entitled;

4.     Plaintiff be awarded punitive and compensatory damages together with interest;

5.     Provided comprehensive physical examinations, by medical provider other than Correctional Medical Systems;

6.     Based on Departments Salient Classification Score Factor of Five (5) be assigned aforementioned area; and;

7.     Plaintiff be awarded such other and further relief as the Court deems just.

Shasidin Ali, SBI #052590
A/K/A Robert Saunders
DCC
1181 Paddock Road
Smyrna, DE 19977

Dated: March 9 2006

## CERTIFICATE OF SERVICE

I, Shamsidin Ali, hereby certify that on the ___4th___ day of ___March___,

2005, a copy of the attached document was caused to be served upon the following:
200.

Clerk of the Court
United States District Court
J. Caleb Boggs Federal Bldg.
844 N King St
Wilmington, DE 19801

_Shamsidin Ali_
Shamsidin Ali, #052590

EXHIBIT "2"

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| PROCEDURE MANUAL | RELATED ACA STANDARDS: 36 | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:   INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS | | |
| EFFECTIVE DATE: Revised 5/15/98 | | |

I.    AUTHORITY:  DOC Policy 4.4

II.   PURPOSE:

To establish an Inmate Grievance Procedure designed to
reduce tension in correctional facilities and to effectively
resolve the vast majority of cases within our system.  Every
inmate will be provided a timely, effective means of having
issues brought to the attention of those who can offer
administrative remedies before court petitions can be filed.
NOTE:  Inmates are encouraged to seek their counselors'
advice on how to best pursue a response to concerns before
prematurely filing a grievance under the guidelines that
follow.

III. APPLICABILITY:

All BOP employees, volunteers, persons or organizations
conducting business with the BOP; all inmates under BOP
custody or supervision.

IV.   DEFINITIONS:

A.    Bureau Grievance Officer (BGO):  A BOP employee who
reviews and mediates appeal of the Warden's/Warden's
Designee decision.

B.    Emergency Grievance:  An issue that concerns matters
which under regular time limits would subject the
inmate to a substantial risk of personal, physical or
psychological harm.

C.    Grievance:  A written complaint concerning the
substance or application of a policy or practice; any
action toward an inmate by staff or other inmates; any
condition or incident within the institution that
affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | 2  OF  7 |

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

       Health Services Administrator
       Director of Nursing
       Charge Nurse
       Chief Medical Officer
       Medical Records Clerk
       Mental Health Counselor
       Chief Dental Officer
       Dental Assistant

V.   PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.   Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.   NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | 6 |

recommendation. Decisions by the Bureau Chief of Prisons a final and not open to grievant interpretation. The Bureau of Prisons will return his final decision and the grievance to the IGC for closure and monitoring for issues of complianc.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by t Warden/Warden's Designee. A copy of the grievance shall be se to the IGC upon receipt by the Warden/Warden's Designee. And t Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance doe not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO).  The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

Universal Grievance:

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

Institutional Transfer:

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded.  If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II.  The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review.  If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review.  Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

Appeals:

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal.  This form must be given to the IGC who is responsible for tracking the status of each grievance.  The IGC will forward the appeal and grievance file to the BGO.  Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level.  NOTE:  The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

EXHIBIT "3"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NOV 08 2000

William E. O'Neil,            )
                             )
            Plaintiff,        )
                             )
      v.                     )
                             )    C.A. No  99-849-SLR
Rick Kearney, Jean Snyder,    )
Dr. Weiss, Karen Clark,       )
                             )
            Defendants.       )

MEMORANDUM ORDER

I.    INTRODUCTION

      William E. O'Neil ("plaintiff") is a Delaware prison inmate
incarcerated at Sussex Correctional Institution ("SCI") in
Georgetown, Delaware.  The defendants are the prison warden and
three employees of Prison Health Services (collectively
"defendants").  Plaintiff filed this action under 42 U.S.C. §
1983, asserting that defendants violated his Eighth Amendment
right to be free from cruel and unusual punishment for the
defendants' failure to protect the plaintiff from an attack by
another inmate.  Plaintiff seeks compensatory and punitive
damages.  Procedurally, the court is faced with motions to
dismiss from defendants.

II.   FACTS

      The basis for plaintiff's complaint is the placement of a
violent inmate into his infirmary room on November 8, 1997.
Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states
that at 4:00 P.M. another inmate, Michael Hall, was brought into
the room with plaintiff. Apparently, Hall had assaulted another
inmate and was transferred to the infirmary for observation.
Plaintiff alleges that Hall has had similar problems in the past
as a result of his failure to take medication. The complaint
maintains that defendant Karen Clark, a psychologist in the ward,
was aware of Hall's problems and directed Hall to be placed in
the room with plaintiff anyway. Plaintiff further maintains that
Dr. Weiss, the mental health supervisor, had been treating Hall
and ordered him to be observed prior to these assaults. At
approximately 3:00 A.M., plaintiff was awakened by kicking and
beating from Hall. As a result, plaintiff required ten stitches.

Plaintiff contends that defendants violated his Eighth
Amendment rights by acting with reckless disregard for his safety
when they placed a violent inmate in his room.

Defendants move to dismiss the complaint for plaintiff's
failure to exhaust administrative remedies as required by 42
U.S.C. § 1997e(a).[1]

---

[1]   Defendants also argue that plaintiff has failed to allege
facts which would state a claim for a violation of the Eighth
Amendment and that plaintiff's claim is barred by the applicable
statute of limitations. However, because the case is being
dismissed for plaintiff's failure to exhaust administrative
remedies, no discussion of the merits of plaintiff's claim is
warranted.

III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §

1997e(a), provides that

> [n]o action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as available are
> exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71

(1996)). 18 U.S.C. § 2636(g) defines "prison conditions" as

"...the effects of actions by government officials on the lives

of persons confined in prison...." Actions under this clause

relate to "the environment in which prisoners live, the physical

conditions of that environment, and the nature of the services

provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291

(3rd. Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the

defendants' actions fit under the purview of the statute. The

placement of a violent prisoner in plaintiff's room is certainly

an action that affected the environment in which he lived.

Because the action complained of is a "prison condition,"

plaintiff is required to exhaust administrative remedies, if any

exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner

grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2]  (D.I. 2)  In

Booth, the court held that prisoners must exhaust administrative

remedies available to them prior to filing a § 1983 action,

whether or not the remedies provide the inmate-plaintiff with the

relief desired.  206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d

65, 78 (3rd. Cir. 2000)).  By applying § 1997e(a) without

exception, the policies underlying the exhaustion requirements

are promoted, that is, the agency involved is given the

opportunity to discover and correct its own mistakes and also

conserve judicial resources.  Nyhuis, 204 F.3d at 75.

  V.  CONCLUSION

    Therefore, at Wilmington this 6th day of November, 2000,

    IT IS ORDERED that the motions to dismiss filed on behalf of

defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark

are granted.

                              _____
                              United States District Judge

---

    [2] Presumably this statement evidences that plaintiff thought
the grievance process was only for prisoner and institution
matters.

4

EXHIBIT "4"

# EXHIBIT 4

## SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Shamsidin Ali v. Delaware Department of Corrections, et al.
Civil Action NO. 05-102-KAJ

\15_A:LIAB\ESTHOMPSON\LLPG:358541:ESTHOMPSON\13252\00165

EXHIBIT "5"

1 of 1 DOCUMENT

FRANK WHALEN, JR., Plaintiff, v. CORRECTIONAL MEDICAL SERVICES, DR.
KEITH IVENS AND MELODY A. THORPE, Defendants.

Civil Action No. 02-246 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 21334*

November 20, 2003, Decided

**SUBSEQUENT HISTORY:** Complaint dismissed at *Whalen v. Ivens, 2004 U.S. Dist. LEXIS 9532 (D. Del., May 11, 2004)*

**PRIOR HISTORY:** *Whalen v. Corr. Med. Serv., 2003 U.S. Dist. LEXIS 14562 (D. Del., Aug. 18, 2003)*

**DISPOSITION:** [*1] Motion to dismiss complaint granted.

**COUNSEL:** Frank Whalen, Jr., Pro se Plaintiff.

Kevin J. Conners, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, Wilmington, Delaware. Attorney for Defendant, Melody A. Thorpe.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion Of Defendant, Melody A. Thorpe, To Dismiss Plaintiff's Complaint. (D.I. 35.) For the following reasons, the Court will grant Defendant's Motion.

### BACKGROUND

Plaintiff is an inmate alleging that various acts by Correctional Medical Services and its employers amounted to a deliberate indifference to his medical needs, and therefore, violated his *Eighth Amendment*

rights. Plaintiff alleges that during his incarceration Defendant administered to him an excessive amount of the drug Nubain, leading to his "near death and paralysis." (D.I. 2.) Defendant is a nurse practitioner who was employed by Correctional Medical Services at the time Plaintiff was treated. By her Motion (D.I. 35), Defendant moves [*2] to dismiss Plaintiff's Complaint.

### STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure,* a court must "accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).* A court will grant a defendant's motion to dismiss only if it appears that the plaintiff could prove no set of facts that would entitle him or her to relief. A court is to construe a handwritten pro se complaint liberally, holding it to a less stringent standard than pleadings drafted by attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).*

### DISCUSSION

Defendant contends that Plaintiff has not satisfied the notice pleading required of *Federal Rule of Civil Procedure 8(a).* Specifically, Defendant contends that Plaintiff's Complaint does not state a claim of deliberate indifference amounting to an *Eighth Amendment* violation. Further, Defendant contends that Plaintiff's Complaint [*3] does not allege that she personally committed any acts amounting to a deliberate indifference to Plaintiff's medical needs. In response, Plaintiff contends that his Complaint sufficiently alleged acts demonstrating Defendant's deliberate indifference in administering excessive doses of Nubain thereby leading to his alleged injury.

In order to successfully allege a *Section 1983* action for failure to provide medical care under the *Eighth Amendment,* an inmate plaintiff must allege practices that violate "evolving standards of decency." *Estelle, 429 U.S.*

2003 U.S. Dist. LEXIS 21334, *3

at 102. Medical malpractice does not become an *Eighth Amendment* violation merely because the plaintiff is a prisoner. *Id. at 105.* Instead, the defendant's action must be said to constitute "'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id. at 106.* To meet this standard of deliberate indifference, the defendant must know of the inmate's condition and disregard an excessive risk of the inmate's health or safety. *Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).* Applying these standards, [*4] the Court will grant Defendant's motion to dismiss.

In his Complaint, Plaintiff alleges that "he was given an overdose of the Narcotic [sic] Nubain by defendants on 12-18-2000 at 2:30 P.M.; which led to plaintiff coming near death and paralysis." (D.I. 2.) Although this allegation sufficiently pleads an action for medical malpractice, an incident of medical malpractice does not amount to an *Eighth Amendment* violation simply because Plaintiff is an inmate. See *Estelle, 429 U.S. at 102.* Accordingly, even when viewing Plaintiff's Complaint under the liberal standards provided by *Rule 8(a)* and Estelle, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.

An appropriate order will be entered.

## ORDER

WHEREAS the Defendant Melody A. Thorpe filed a Motion To Dismiss Plaintiff's Complaint (D.I. 35),

IT IS HEREBY ORDERED this 20 day of November, 2003, that Defendant Melody A. Thorpe's Motion To Dismiss Plaintiff's Complaint (D.I. 35) is GRANTED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE