## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAMSIDIN ALI, a/k/a Robert Saunders, and MASJID ULLAH, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PAUL HOWARD, et al., | ) ) |
| Defendants. | ) ) |

C. A. No. 05-102-***

Jury Trial Requested

### DEFENDANT THOMAS CARROLL'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Defendant Thomas Carroll ("Defendant") hereby responds to Plaintiff's Request for Admissions ("Requests"):

### GENERAL OBJECTIONS

1. Defendant objects to the Requests to the extent that they seek information or documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

2. Defendant objects to the Requests to the extent that they purport to require supplementation of these responses beyond that required by Federal Rule of Civil Procedure 26(e).

3. Defendant objects to the Requests to the extent that they purport to place duties upon him not set forth in, or contemplated by, the Federal Rules of Civil Procedure.

4. Defendant objects to the Requests to the extent that they purport to seek information or documents not in his possession, custody or control.

5.  Defendant objects to the Requests to the extent that they seek the production of documents equally available to Plaintiff or Plaintiff's counsel. Such documents will be identified by Defendant, but will not be produced.

6.  Defendant objects to the Requests to the extent that they purport to require production of information or documents which are impractical or unduly burdensome to reproduce.

7.  Defendant objects to the Request for Production to the extent that they seek the production of documents generated by or received from counsel for Defendant in connection with this litigation on or after the date of the acceptance of representation on the grounds that such documents are protected by attorney-client and work product privileges.

## RESPONSES

Subject to, and without waiver of the foregoing General Objections and those set forth in Defendant's Responses, Defendant responds, after a reasonable search, and subject to supplementation, as follows:

1.  Plaintiff arrived at this facility from Sussex Correctional Institution ("SCI").

**RESPONSE:** Admitted that Plaintiff arrived at Delaware Correctional Center ("DCC") from SCI on June 10, 2005.

2.  Placed in Building 21 (upper #8) maximum security.

**RESPONSE:** Admitted that when Plaintiff arrived at DCC from SCI on June 10, 2005, he was housed in Building 21 and assigned the upper #8 bunk.

3.  The plaintiff arrived walking with assistance of cane.

**RESPONSE:** The SCI property forms indicate a cane on the plaintiff's inventory list; however, when plaintiff's property was inventoried at the DCC no cane was found.

    4.    Exercise for inmates housed in building, consist of three hours per week.

**RESPONSE:** Admitted.

    5.    Inmates housed in building 21, not permitted canes.

**RESPONSE:** Admitted, however, if it is determined by medical that an inmate needs a cane then based on security and other factors an inmate may be permitted to have one.

    6.    Within building 21, each housing unit has one handicapped cell.

**RESPONSE:** Admitted.

    7.    Total time plaintiff housed in building 21, fed in cell over 4 months.

**RESPONSE:** Admitted that Plaintiff was housed in Building 21 at DCC for nearly five months. (6/10/05 through 11/7/05) Admitted that inmates in Building 21, have their meals in their cells.

    8.    Inmates housed in building 21 fed in cell by correctional staff.

**RESPONSE:** See Response to Request No. 7.

    9.    Plaintiff arrived from SCI, with 8 points, according to classification salient scoring system.

**RESPONSE:** Objection. Defendant does not understand what "salient" means in the context of the inmate point system used at DCC. Without waiving this objection, it is admitted that when Plaintiff arrived at DCC from SCI on June 10, 2005, he was assigned five (5) points. The scoring system does not use the term "salient."

    10.    Upon arrival from SCI, within plaintiffs records were no indication transferred of disciplinary reasons.

**RESPONSE:** Admitted that Plaintiff's transfer from SCI to DCC on June 10, 2005, was not due to disciplinary reasons.

11. You ordered plaintiff placed in building 21.

**RESPONSE:** Denied.

12. Approval by initial classification team to maximum security unit, approved by you.

**RESPONSE:** Denied.

13. Within Department of Corrections Classification System, is provision for classification override?

**RESPONSE:** Objection. This Request is overly broad and vague. Further objection that this Request seeks information protected from discovery by 11 *Del. C.* § 4322. Without waiving these objections, it is admitted that the warden of an institution has the authority to veto a decision rendered by a classification board or committee.

14. Upon arrival at DCC, plaintiff's medical records accompanied.

**RESPONSE:** Admitted that an inmate's medical records accompany him from institution to institution.

15. According to plaintiff's initial classification (June 13, 2005), RA (Risk Assessment) score: Observation.

**RESPONSE:** Upon arrival at DCC, plaintiff initially was put on 90 day observation. The plaintiff was not actually classified until September, 2005.

16. Where [sic] you informed plaintiff placed in building 21 and reason.

**RESPONSE:** The Defendant has no recollection of plaintiff's housing placement.

17. Prior arrival DCC, plaintiff housed at SCI 10 years.

**RESPONSE:** Admitted that prior to his arrival at DCC on June 10, 2005, plaintiff was housed at SCI for approximately 9 years.

18. Plaintiff required walk distance of city block, to visiting room, secured by waist chain and leg shackles.

**RESPONSE:** Objection. This Request is vague and overly broad. Without waiving this objection, it is admitted that in general inmates housed in Building 21 are required to wear a waist chain and leg shackles during movement outside of their cells. However, defendant has no information regarding plaintiff's movement outside of his cell at any time or how he was restrained.

19. The department of corrections does not have written policy for housing physically incapacitated inmates at DCC.

**RESPONSE:** Admitted.

20. Prior to moving from one housing unit to another, inmates physical problems not reviewed or part of any record.

**RESPONSE:** Denied.

21. Between January 2005 and December 22, 2006, there was outbreak of Methicillin-Resistant Staphylococcus Aureus (MRSA).

**RESPONSE:** Objection. There is no MRSA claim presented in this cause of action. Therefore, this Request has no relevance to Plaintiff's claims, requests information beyond the scope of Rule 26, and is not designed to lead to the discovery of admissible evidence.

22. Plaintiff was diagnosed with MRSA.

**RESPONSE:** See Response to Request No. 21.

23. You are familiar with management of Methicillin-Resistant Staphylococcus Aureus infection (Federal Bureau of Prisons – Clinical Practice Guidelines, August, 2005).

**RESPONSE:** See Response to Request No. 21.

24. Did medical contractors, advice you of increase in MRSA cases.

**RESPONSE:** See Response to Request No. 21.

25. Are all housing units at DCC in compliance with "Americans with Disabilities Act" standards?

**RESPONSE:** Objection. This Request seeks a legal opinion. Denied that Defendant violated Plaintiff's rights under the Americans with Disabilities Act.

26. Inmates in wheelchairs, crutches, canes and aged inmates, required to stand-in rain, snow, cold and extremely hot weather to go to mess hall.

**RESPONSE:** Objection. This Request is vague and overly broad. Further objection that this Request seeks information regarding other inmates and therefore has no relevance to Plaintiff's claims, requests information beyond the scope of Rule 26, and is not designed to lead to the discovery of admissible evidence. Without waiving these objections, as stated herein, plaintiff receives his meals in his cell.

27. As a result of MRSA outbreak, housing units were routinely cleaned with an Environmental Protection Agency (EPA) registered disinfectant.

**RESPONSE:** See Response to Request No. 21.

28. Inmates assigned wheelchairs, depend on other inmates, too [sic] assist in getting too [sic] various destinations.

**RESPONSE:** Objection. This Request is vague and overly broad. Further objection

that this Request seeks information that has no relevance to Plaintiff's claims, requests information beyond the scope of Rule 26, and is not designed to lead to the discovery of admissible evidence: Plaintiff does not use a wheelchair.

29. Security chiefs never advise of MRSA problems at this facility.

**RESPONSE:** See Response to Request No. 21.

30. Plaintiff has series of medical illnesses.

**RESPONSE:** Admitted that Plaintiff's medical records reflect various medical complaints by Plaintiff.

31. On several occasions, via letters, grievances informed of plaintiff's medical records.

**RESPONSE:** Defendant has no knowledge of correspondence being sent to him on this matter.

32. You refused to hear non-medical emergency grievances.

**RESPONSE:** There is a grievance process in place at DCC, and pursuant to that process, grievances are not submitted to the Warden.

33. Aware hot food constantly not served in building 21.

**RESPONSE:** Objection. This Request is vague and overly broad. Without waiving this objection, hot food is served in building 21 in insulated food trays to the inmates at least once a day and on some days as much as three times a day.

34. Inmates diagnosed with MRSA infection were examined by a clinician to determine their risk of contagion to others.

**RESPONSE:** See Response to Request No. 21.

35. Medical contractors do not inform Warden, deputy Warden or Security

Chiefs, need for inmates to receive out of institutions services.

**RESPONSE:** Objection. This Request is vague and overly broad. Without waiving this objection, medical providers do not disclose inmates' confidential medical information to Defendant, the Deputy Warden or the Security Chief.

36. Failure to provide proper housing to plaintiff based on medical issues, present substantial risk of permanent injury.

**RESPONSE:** Denied that Plaintiff has been denied "proper housing." Further denied that any conduct by Defendant has caused Plaintiff injury or risk of injury.

37. Plaintiff was interviewed here by New[s] Journal reporters, shortly after being transferred too [sic] this facility.

**RESPONSE:** Defendant is without sufficient information to admit or deny the allegations set forth in this Request.

38. On September 8, 2006 received correspondence from Glen C. Pruitt, Associated Executive Director – Delaware HIV Consortium, addressing lack of hospice program.

**RESPONSE:** Objection. This Request seeks information that has no relevance to Plaintiff's claims, requests information beyond the scope of Rule 26, and is not designed to lead to the discovery of admissible evidence. Without waiving this objection, Defendant is without sufficient information to admit or deny the allegations set forth in this Request.

39. Under Title 11 Section 3536(e) inmates entitled hospice care.

**RESPONSE:** Denied.

40. You ignored emergency medical grievances sent by plaintiff.

**RESPONSE:** See Response to Request No. 32.

41.  There is no longer outside agency, providing grievance monitoring services.

**RESPONSE:** Objection. This Request is vague and overly broad. Without waiving this objection, no outside agency is currently monitoring the grievance process at DCC.

42.  Plaintiff housed in building 21 (upper #8), with inmate suffering severe mental disorders over two months.

**RESPONSE:** Objection. This Request is vague and overly broad. Without waiving this objection, denied.

                                            **STATE OF DELAWARE**
                                            **DEPARTMENT OF JUSTICE**

                                            /s/ Eileen Kelly_____
                                            Eileen Kelly, ID#2884
                                            Deputy Attorney General
                                            Carvel State Office Building
                                            820 North French Street, 6th fl.
                                            Wilmington, DE 19801
                                            (302) 577-8400
                                            eileen.kelly@state.de.us

Dated: January 26, 2007

## *CERTIFICATE OF SERVICE*

       I hereby certify that on January 26, 2007, I electronically filed *Defendant Thomas Carroll's Response to Plaintiff's Request for Admissions*.  I hereby certify that on January 26, 2007, I have mailed by United States Postal Service, the document to the following non-registered party:

Shamsidin Ali, a/k/a Robert Saunders
SBI#052590
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977

                    **STATE OF DELAWARE**
                    **DEPARTMENT OF JUSTICE**

                    /s/ Eileen Kelly
                    Eileen Kelly, ID#2884
                    Deputy Attorney General
                    Department of Justice
                    820 N. French St., 6th Floor
                    Wilmington, DE 19801
                    (302) 577-8400
                    eileen.kelly@state.de.us