# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMSIDIN ALI, a/k/a Robert Saunders, | ) | |
| and MASJID ULLAH, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-102-*** |
| | ) | |
| PAUL HOWARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT TOM CARROLL'S
### RESPONSE TO PLAINTIFF'S INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Tom Carroll responds to Plaintiff's Interrogatories as follows:

### GENERAL OBJECTIONS

1.      Answering Defendant objects to the Interrogatories to the extent that they seek information or documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

2.      Answering Defendant objects to the Interrogatories to the extent that they purport to require supplementation of these responses beyond that required by Federal Rule of Civil Procedure 26(e).

3.      Answering Defendant objects to the Interrogatories to the extent that they purport to place duties upon them not set forth in, or contemplated by, the Federal Rules of Civil Procedure.

4.      Answering Defendant objects to the Interrogatories to the extent that they purport to seek information or documents not in their possession, custody or control.

5.      Answering Defendant objects to the Interrogatories to the extent that they seek the production of documents equally available to the Plaintiff or Plaintiff's counsel. Such documents will be identified by Answering Defendant but will not be produced.

6.      Answering Defendant objects to the Interrogatories to the extent that they purport to require production of information or documents which are impractical or unduly burdensome to reproduce.

7.      Answering Defendant objects to the Interrogatories to the extent that they seek the production of documents generated by or received from his counsel in connection with this litigation on or after the date of the acceptance of representation on the grounds that such documents are protected by attorney-client and work product privileges.

## **RESPONSES**

Subject to, and without waiver of the foregoing General Objections and those set forth in Answering Defendant's Responses, Answering Defendant responds, after a reasonable search, and subject to supplementation, as follows:

1.      Explain specific reasons plaintiff placed in building 21 (administrative segregation) when transferred from Sussex Correctional Institution.

**RESPONSE:** Plaintiff was not classified to administrative segregation but to observation which resulted in his placement in Building 21.

2.      Since in defendant's Kearney admissions stated plaintiff not transferred for rule infraction. Name all parties involved in placing plaintiff in building 21.

**RESPONSE:** The Multi- Disciplinary Team including Classification Officer Jayme Jackson and Lieutenant Ricky Porter classified Plaintiff.

3.     What is the specific policy governing placing inmates in administration when transferred from one facility to another.

**RESPONSE:**  The Delaware Correctional Center (DCC) does not have a written policy governing placing inmates in administrative segregation when transferred from one facility to another.  DCC has a classification process by which inmates are assigned housing.

4.     Why was plaintiff kept in administrative segregation a total of four months? Per who's order?

**RESPONSE:**  Plaintiff was not in administrative segregation during his four months in maximum security.  See Response to Interrogatory #1.

5.     Explain why inmates housed in building 21 required to eat all meals in their cells and permitted three hours of recreation per week.

**RESPONSE:**  DCC Housing Rules for Maximum Security require that meals be served in inmates' cells.   Exercise periods for all Maximum Security levels shall be up to 1 hour per day at least 3 days per week including a shower and cell clean-up.

6.     Outline specific reasons inmates placed in building 21 and why the majority of inmates housed in building 21 previously housed in Security Housing Unit. ("SHU").

**RESPONSE:** Objection. This Interrogatory seeks information regarding other inmates and therefore has no relevance to Plaintiff's claims, requests information beyond the scope of Rule 26 and is not designed to lead to the discovery of admissible evidence.

7.     Detail rule infractions plaintiff was cited while being housed in building 21.

**RESPONSE:**  There were none.

     8.     Detail procedures for housing inmates in building 21 with physical disabilities.

**RESPONSE:** Placement of inmates in housing units is based on a variety of concerns, including security concerns and an inmate's individual needs.

     9.     Outline prosepctive (sic) areas plaintiff housed while in building 21.

**RESPONSE:** Plaintiff was housed in Building 21 C tier upper 8 bottom bunk.

     10.     Why was plaintiff's cane take upon being placed in building 21 and state procedure for same.

**RESPONSE:** Plaintiff's cane, if he had one, was not taken by DCC personnel.  There is no documentation indicating that Plaintiff arrived at DCC with a cane.

     11.     How many times and dates did plaintiff make you aware of medical and housing problems in building 21?

**RESPONSE:** Defendant does not recall receiving complaints from Plaintiff concerning housing or medical issues.

     12.     What is the distant (sic) plaintiff had to walk to visiting and search room?

**RESPONSE:** Objection. This Interrogatory is vague and overly broad in that it does not specify a time period.

     13.     Describe manner inmate secured each time brought out of building 21.

**RESPONSE:** In general, inmates housed in building 21 are required to wear a waist chain and leg shackles during movement outside of their cells. However, Defendant has no information regarding plaintiff's movement outside of his cell at any time or how he was restrained.

14.    Describe policy for transporting handicapped inmates from building 21.

**RESPONSE:** Objection. This Interrogatory is vague and overly broad. Plaintiff does not specify the meaning of the term "handicapped." The means of inmate transport would depend on the specific situation.

15.    Outline procedures for screening inmates assigned cells in building 21 prior placing in cell with another inmate.

**RESPONSE:** Inmates are assigned to Building 21 through the classification process. After an inmate has been classified to Building 21, the transfer officer screens inmates for any no-contacts and bottom bunk requirements before placing inmates in a cell together.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Eileen Kelly
Eileen Kelly, I.D. #2884
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
eileen.kelly@state.de.us
(302) 577-8400

Dated: May 30, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2007, I electronically filed *Defendant Tom Carroll's Response to Plaintiff's Interrogatories*. I hereby certify that on May 30, 2007, I have mailed by United States Postal Service, the document to the following non-registered party:

Shamsidin Ali, a/k/a Robert Saunders
SBI#052590
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977


**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Eileen Kelly
Eileen Kelly, ID#2884
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us