IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAMSIDIN ALI, a/k/a Robert Saunders, )<br>           Plaintiff, )<br>     v. )<br>PAUL HOWARD, et al., )<br>           Defendants. ) | C. A. No. 05-102-*** |

**STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

1. Plaintiff Robert H. Saunders, a.k.a. Shamsidin Ali ("Plaintiff"), is an inmate incarcerated by the Delaware Department of Correction ("DOC"). Currently serving a life sentence, he has been in the custody of the DOC since 1977.

2. Plaintiff initiated this current action in 2004, making various 42 U.S.C. §1983 allegations and claiming a violation of the Americans with Disabilities Act. He was not granted *in forma pauperis* status because he previously filed over three frivolous complaints in federal court.[1]  See D.I.6.

3. Plaintiff subsequently amended his complaint. D.I.19. The Third Amended Complaint ("Plaintiff's Complaint") was docketed as D.I.135.

4. Plaintiff alleges four counts in D.I.135. None of these counts are supported by evidence, or by the law.

5. This is the State Defendants' Memorandum of Points and Authorities in support of their Motion for Summary Judgment on all counts of Plaintiff's Complaint.

---

[1] By State Defendants' count through the federal docketing system, to date, Plaintiff has filed at least 39 civil actions in federal court: 23 actions in the District of Delaware, 12 to the Third Circuit Court of Appeals, 2 in the Eastern District of Pennsylvania, and 2 in the United States Supreme Court.

## **MEMORANDUM OF LAW**

6. The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

7. In this case, there are no genuine issue of material facts, and so State Defendants are entitled to judgment as a matter of law.

### **Opening of Plaintiff's Mail and the Inmate Classification System**

8. The first count of Plaintiff's Complaint alleges that his rights were violated when his personal and legal mail were opened outside his presence. D.I.135, ¶19. At the outset, it must be noted that inmates have no expectation of privacy regarding their personal mail. *Hamilton v. Messick*, 2005 WL 736684 (D.Del. March 31, 2005), *3 (citing *Witherow v. Paff*, 52 F.3d 264, 265-66 (9th Cir.1995) (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir.1991) (upholding the inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir1986) (upholding the inspection of outgoing and incoming mail); and *Cherry v. Litscher*, No. 02-C-71-C, 2002 WL 32350051 at *14 (W.D.Wis. Apr.1, 2002)). Therefore, with regard

to any alleged intrusions involving his personal correspondence, Plaintiff fails to state a colorable claim.

9. Legal mail should be "marked with an attorney's name and an indication that the person is an attorney, and the front of the envelope is marked 'Special Mail-Open only in the presence of the inmate.'" *Vaughn v. Schoapt*, 2007 WL 3274189 (W.D.Pa. Nov. 5, 2007), *1.

10. In his deposition, Plaintiff explains that his dissatisfaction with the prison mailroom stemmed from "about five or six" letters that were opened outside his presence. *See Exhibit 1, Deposition of Plaintiff Ali-Saunders, page 22*. Previously, Plaintiff had been caught by the DOC for violating the policy of communicating with a fellow inmate (Inmate Thomas Capano) by sending correspondence to his daughter Nicole, who then forwarded the messages to Inmate Capano. *See Exhibit 2, Excerpt of Plaintiff's Original Complaint, D.I.1*. Disciplinary action was taken against the Plaintiff. *Id*. Plaintiff was advised that because he had violated the prohibition against communicating with a fellow inmate, his personal mail would be checked for future infractions. *Id*. Plaintiff was specifically advised by the Department of Correction staff on July 8, 2004 that "[a]ll mail being sent to the courts and/or attorneys will not be searched as long as they are clearly marked as 'Legal Mail' and addressed as such." *Id*.

11. At his deposition, when pressed for further detail about the letters that constituted the violation in Count I of the Third Amended Complaint, Plaintiff stated that the letters were from "Senator Henry", "Senator Peterson," and "United States Representative Elijah Cummings." *Exhibit 1, Deposition, pp.23-24*. Plaintiff complained

that the letters were opened because "they don't think that mail from state representatives are confidential mail." *Id. at 23*.

12.     Plaintiff fails to allege that the opened mail was "legal mail" as defined by the Courts, or as described by the Department of Correction in its letter of July 8, 2004. Nor does he allege that he retained an attorney for any past, pending or future legal matters. Instead, he vaguely references mailings to and from individuals involved in civic institutions. This does not suffice as protected communication.

13.     Nonetheless, Plaintiff filed Grievance #10290 regarding his opened mail. *See Exhibit 3, Selected Grievances from Plaintiff*. Plaintiff signed off on a resolution of this matter when the grievance committee decided that letters which reasonably appeared to be legal mail would be opened in Plaintiff's presence. *Id*. Plaintiff then filed no further grievances on the subject of opened legal mail. *Id., Summary of Mailroom Grievances*.

14.     To assert a violation of tampering with mail, Plaintiff must prove personal involvement in the alleged violation by each defendant whom he seeks to make liable. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)*; Moffit v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991); *Amaro v. Taylor*, 170 F.Supp.2d 460, 464 (D.Del. 2001). However, in this case Plaintiff cannot identify who opened the mail in question outside his presence. He named Corporal Fisher as a Defendant because Fisher "was in charge of the mailroom. So he was there the majority of the time." *Exhibit 1, Deposition at 21*. Such reasoning invokes the theory of *respondeat superior* liability, which does not apply in a §1983 action. *Amaro v. Taylor*, 170 F.Supp. at 464. Plaintiff also named Joseph Johnson as another actor in the mailroom (*Exhibit 1, Deposition at p. 40*) , but

cannot describe any specific actions taken by Johnson. *Id. at pp. 21-22.*

15. In addition to the fatal deficiencies in plaintiff's claim identified *supra*, the State Defendants are also entitled to qualified immunity on the alleged facts of this case. To allege a First Amendment violation for mail tampering, plaintiff must allege a pattern of malicious conduct in this regard. *Cancel v. Goord*, 2001 WL 303713 at *6 (S.D.N.Y.); *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986). *Hudson v. Greiner*, 2000 WL 1838324 (S.D.N.Y.); *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y. 1995). One or two isolated incidents are insufficient. *Cancel, supra*, at *6.

16. Because Plaintiff's allegations are so vague, he cannot point to any deliberate or malicious intent by either Defendant Fisher or Johnson. To the contrary, the Inmate Grievance Committee's determination in Grievance #10290 (to open mail that was not properly marked in Plaintiff's presence) demonstrates the DOC's concern for Plaintiff's privacy rights, despite Plaintiff's prior deliberate violation of established mail policies. Plaintiff provides no evidence whatsoever that contradicts this inference.

**Americans with Disabilities Act Claim**

17. The second count of Plaintiff's Complaint alleges a violation of the Americans with Disabilities Act ("A.D.A"). 42 U.S.C. §12132 provides that "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." The Third Circuit has held that a plaintiff alleging a disability claim must show that "1) he is a qualified individual; 2) with a disability; 3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public

entity, or was subjected to discrimination by any such entity; 4) *by reason of his disability*." *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)(emphasis added).

18.   For this count, all defendants named by Plaintiff for this violation are individuals. *See Exhibit 1, Deposition, pp. 36-37*. It is well established at the federal circuit court level that Title II of the ADA does not provide a basis for individual personal liability. *Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004); *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999).

19.   Previously, Plaintiff had named the Department of Correction as a defendant in this action. On June 6, 2006, however, Plaintiff voluntarily filed a "Motion to Delete" (construed by the Court as a Motion to Dismiss) to dismiss the Department of Correction as a defendant. D.I.52 The Motion was granted on June 13, 2006. D.I.57. Accordingly, at his deposition, Plaintiff did not allege that the Department of Correction violated his rights under the ADA.

20.   Moreover, in the Third Circuit, States and officials in their official capacity are protected by Eleventh Amendment immunity from lawsuits by inmates for alleged Title II violations in the prison environment. *Cochran v. Pinchak*, 401 F.3d 184 (3d Cir. 2005). Applying an analysis under *City of Boerne v. Flores*, 521 U.S. 507 (1997), of the Fourteenth Amendment Section 5 basis of the ADA's Title II abrogation of Eleventh Amendment immunity, the Third Circuit stated in *Cochran*:

> We believe that Title II's obligation to include "disabled" prisoners in all "services, programs, or activities" conflicts with the States' right to impose classifications on disabled prisoners as long as these classifications pass muster under the Equal Protection Clause. Furthermore, Title II

>> conflicts with *Turner*'s [*Turner v. Safley*, 482 U.S. 78 (1987)] policy of giving prison officials wide latitude to create prison policies and anticipate security problems. If a prison official is obligated under Title II to make all "services, programs, or activities" accessible to all disabled individuals, that official would be impeded in his ability to make an individual assessment of what is rational and safe in the prison context. Title II's mandate would also prevent an official from making classifications amongst prisoners that are rationally related to a legitimate government interest. . . . Therefore, Title II of the ADA, as applied here, does not validly abrogate the States' sovereign immunity and cannot be enforced against the State of New Jersey or the DOC in a lawsuit for monetary damages.

401 F.3d at 192.

21. Plaintiff is not a "qualified individual" under the ADA. Not only has be failed to produce any evidence demonstrating that he is disabled, but he also testified that he is able to walk without the assistance of a cane. *Exhibit 1, Deposition at p. 31*. In fact, Plaintiff did not bring his cane to the deposition because he has "a habit of forgetting it." *Id.* He is able to walk two blocks without the assistance of his cane. *Id.*

22. As further evidence that Plaintiff is not disabled, in Grievance #62163 (included in Exhibit 3), in an ADA grievance filed by Plaintiff, "prior to the hearing, [Inmate] Saunders was observed walking up and down the hall, standing at the door, and standing outside the grievance hearing room without using a cane." In Grievance #21534, submitted on December 14, 2005, Plaintiff complained that he was not provided seating in the chow hall, and did not want to use a wheelchair. The DOC staff reviewed the complaint and surmised that "[w]e need to know if this inmate is physically fit to live in population or is too handicapped. If he cannot live in population then he will need to be house [sic] in the infirmary in order to satisfy his special needs. Please evaluate and give the inmate a level one hearing." *Exhibit 3*. A hearing was held on March 14, 2006. However, because Plaintiff had already filed the instant action and the matter was in

litigation, the grievance was withdrawn. As discussed in further detail *infra*, Plaintiff should be procedurally precluded from pursuing this entire action in federal court because he did not exhaust his administrative remedies prior to filing this Complaint.

23. Plaintiff has the burden of alleging facts and offering a minimal evidentiary basis to show that he was discriminated against because of his disability. In the instant action, plaintiff alleges that he was discriminated against because by the time his breakfast was served in the morning, the "butter wouldn't melt on the french toast or the pancakes" and "sometimes we didn't [get] coffee." *Exhibit 3*. Receiving a cold breakfast is not an exclusion "from participation in or [denial of] the benefits of the services, programs, or activities of a public entity, or [subjection] to discrimination by [Defendants] by reason of [Plaintiff's] disability." *Bowers at* 553 n.32. Thus, Plaintiff has not alleged a violation of the ADA.

24. When asked at his deposition from any jobs or programs where he was subjected to exclusion, Plaintiff was unable to point to any specific jobs or programs that he had applied for. *Exhibit 1 at 34-35*. He did acknowledge that held a position as a kitchen employee as recently as 2004. *Id. at 36*.

25. When asked what accommodations Plaintiff expected as a result of his disability, Plaintiff stated that expected to be free of waist chains and shackles during movement about the facility, and had anticipated assignment to a handicapped cell. *Id. at 32-33*. Now that he was at a difference housing assignment, however, Plaintiff admitted that the handicapped cell was no longer necessary. *Id.*

26. With no evidence on the record to suggest any discriminatory action, it is clear that Plaintiff has failed to establish a *prima facie* case under the ADA. Plaintiff's bald assertions are legally insufficient to survive a summary judgment motion.

### Retaliation / Infringement of First Amendment Rights

27. To develop a *prima facie* case of retaliation, a plaintiff must show not only protected activity and adverse action, but also a causal relationship between the two. *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).

28. Here, Plaintiff claims that his transfer from Sussex Correctional Institution (SCI) in Georgetown, Delaware to Delaware Correctional Center (DCC) in Smyrna, Delaware, was an act of retaliation because he frequently speaks out about the conditions of inmate confinement. D.I.135 at ¶40. In his deposition, Plaintiff clarified that Rick Kearney and Mike Deloy were the two accused tortfeasors in this count. *Exhibit 1 at 47-48*.

29. While Plaintiff claims on the one hand that the retaliatory action he suffered was a transfer to DCC in 2005, at his deposition <u>he described two specific requests that he made in 2002 and 2003 to be transferred to DCC</u>. *Exhibit 1 at 50.* When those transfer requests were made, he goes on to explain, he was told that DCC did not have the available space. *Id.* Plaintiff also acknowledges that he now exercises his First Amendment Rights at DCC in virtually the same manner as he did at SCI. *Id. at 51.* Thus, the transfer cannot possibly be construed as retaliation, as it was <u>*exactly the desired transfer that Plaintiff had requested earlier*</u>.

30. Furthermore, as the Court is aware, inmates have no right to classification. Neither Delaware law nor DCC regulations create a liberty interest in a prisoner's

classification or transfer within an institution. 11 *Del. C.*§ 6529(e). See *Carrigan v. Delaware*, 957 F.Supp 1376, 1386 (3d Cir.1997)("[A]n inmate's interest in a particular security classification or in being assigned to a particular institution is not an interest protected by the Due Process Clause.")

31. Moreover, the Plaintiff does not allege any specific wrongful acts undertaken by these Defendants. Plaintiff believes that Defendant Mike Deloy is liable for retaliation because he took no steps to prevent Plaintiff's transfer to DCC. *Exhibit 1 at 47*. He believes that Defendant Rick Kearney is liable for retaliation because Kearney "says in his admission that he ordered me transferred." *Id.* Plaintiff provides no further evidence to explain the relationship between his First Amendment rights and his transfer to DCC.

32. Because Plaintiff cannot demonstrate the harm that occurred when a transfer *he specifically requested* took place, and caused no change to his ability to exercise his First Amendment Rights, Count III must be dismissed. *See also*, discussion on immunity, *infra*.

### Methicillin-Resistant Staphylococcus Aureus (MRSA) Claim

33. On July 27, 2006, this Court granted Plaintiff leave to amend his complaint for a third time, to add a claim alleging that Plaintiff had contracted the skin affliction MRSA (Methicillin-Resistant Staphylococcus Aureus). D.I.69. Plaintiff was advised that the amended complaint was to be filed by August 28, 2006. On December 13, 2006, Plaintiff's Third Amended Complaint was filed, D.I.135, with Count IV

containing the MRSA allegation. This Complaint is signed and dated "August 21, 2006."[2]

    34.    Plaintiff has not a shred of evidence that he suffers from MRSA. Instead, the medical documentation that is attached to Plaintiff's Third Amended Complaint indicates only that he has been diagnosed for treatable skin afflictions. D.I.135. Plaintiff further admitted under oath at his deposition that no doctor ever diagnosed him with MRSA. Plaintiff was asked:

> Q:    Okay. Now earlier you mentioned that you have a condition, MRSA.
> A:    Yes.
> Q:    Who told you you have that?
> A:    The doctor—not Van Dusen, but it was another one at the—I think his name was Frederick. I got it written down. They have such a high turnover in doctors. I think Van Dusen lasted longer than any of them.
> Q:    And Frederick is his last name?
> A:    I think so.
> Q:    And do you know when he told you you had MRSA?
> A:    This is when the grievance officer—the medical grievance officer carried me in there to see him the day I was up there for a medical grievance. And I had towels and things on my legs and things of that nature.
> Q:    Okay. But Dr. Burke never told you you have that condition. Correct?
> A:    Him and I never really discussed it. He said I had a whole lot of issues. So I assumed that he was saying that was included too.
> Q:    Okay. But he never specifically said—
> A:    Not that I remember.
> Q:    --Mr. Ali, you have MRSA?
> A:    No.
> Q:    Okay. And you've treated with him through 2007; correct?
> A:    Yes.

---

[2] As will be demonstrated, *infra*, D.I.135 was not composed until after December 6, 2006.

      Q:    Like May?

      A:    May 2007

*Exhibit 1 at 69-71*. With the Court granting leave for the Plaintiff to add his MRSA claim, Plaintiff cannot even establish that he has the condition, and thus Count IV must be dismissed. A review of the documents attached to Plaintiff's Third Amended Complaint reveals that the <u>only</u> mention of MRSA is found in Plaintiff's handwritten medical grievances.

      35.    Also in Count IV, Plaintiff points to State Defendants Taylor and Carroll as bearing responsibility for "failure…to demand Correctional Medical Systems [to] address plaintiff's medical needs." D.I.135, ¶43. Plaintiff believes he should assign such responsibility to Defendants Taylor and Carroll because "the buck stops with them. Although they got medical contractors, they are ultimately responsible for what happens to me." *Exhibit 1 at 51-52*. In other words, Plaintiff's theory of liability is premised on the doctrine of *respondeat superior* because State Defendants Stan Taylor and Thomas Carroll hold supervisory positions at the Department of Correction.

      36.    The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. However, such assertions must be made with particularity. *Rode*, 845 F.2d at 1207.

      37.    Plaintiff does not assert claims against these Defendants with particularity. It is inconceivable that the State Defendants could intervene to provide medical care for

Plaintiff's MRSA condition when Plaintiff cannot even establish that he suffers from this affliction.

38.     Because the instant complaint contains only vague and conclusory allegations, with no specific allegations of unconstitutional conduct, and wholly unsupported by factual allegations which would entitle him to relief, State Defendants are entitled to summary judgment.

### Defendants Rendina, Messick, Morgan and Howard

39.     Careful review of Plaintiff's Complaint and subsequent deposition reveals that Plaintiff failed to alleged any specific allegations against Defendants Rendina, Messick, Morgan and Paul Howard.  Accordingly, they must be dismissed as defendants.

### Plaintiff's Claims are Barred by the Prison Litigation Reform Act

40.     Plaintiff in this action brings a *pro se* complaint, filed while he was incarcerated, regarding the conditions of his confinement.  The Plaintiff alleges claims under 42 *U.S.C.* § 1983.  The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically including those brought under 42 *U.S.C.* §1983.  Accordingly, the PLRA is applicable to this matter.

41.     The PLRA contains an "exhaustion of remedies" requirement.  42 *U.S.C.* 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A plaintiff must exhaust administrative remedies even where the grievance process would not provide him with the remedy that he is seeking in his federal court action. *Booth v. Churner*, 206 F.3d 289, 294-295 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). *See also Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement).

42. The Third Circuit has held that the PLRA includes a "procedural default" component. Accordingly, an inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (The PLRA's "goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement").

43. Here, it is obvious that Plaintiff did not exhaust his administrative remedies. In his claim that his mail was censored, he filed a grievance, then signed off on the resolution. Exhibit 3, Grievance #10290. Plaintiff's allegations, as described in Count II of D.I.135, could not be addressed through the grievance process because Plaintiff had already filed the instant litigation (*See, e.g.,* Grievance #21534, Medical Grievance Committee Decision of March 14, 2006: "In Litigation. Withdrawn").

44. With Count IV, Plaintiff attaches grievances to his complaint of August 21, 2006 that are dated December 6, 2006, November 30, 2006, November 18, 2006, November 11, 2006, October 31, 2006, and October 11, 2006. In other words, Plaintiff's Third Amended Complaint must have been composed after December 6, 2006 (the date of the last grievance) in order for those grievances to be included as exhibits to this filing.

Therefore, Plaintiff circumvented the DOC's administrative procedure in favor of litigating his claim in federal court.

45.     A plaintiff procedurally defaults when he fails to carry the grievance process to its administrative conclusion. Thus, Plaintiff failed to exhaust his administrative remedies and is therefore barred from pursuing this action. For this reason, all State Defendants are entitled to summary judgment, and Plaintiff's complaint should be dismissed.

## Qualified Immunity

46.     All named state defendants in this action are entitled to qualified immunity on Plaintiff's Eighth Amendment claim of deliberate indifference. To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

47. In the case at bar, the state defendants did not delay or bar Plaintiff's access to medical care. The Courts have held that, as long as some care is provided, there is no constitutional violation. As mentioned *supra,* Plaintiff admitted in his deposition and his complaint that he was given medical treatment for his skin condition. Therefore, reasonable officials in State Defendants Taylor and Carroll's circumstances could not know that their conduct would present a constitutional violation.

48. Likewise, state defendants took care to open Plaintiff's mail in his presence once Plaintiff suggested that the improperly marked mail he was receiving may fall under the category of "legal mail." Here too, reasonable officials in State Defendants Fisher and Johnson's positions could not know that their conduct would present a constitutional violation.

49. Where Plaintiff requested a transfer to DCC in 2002 and 2003, and the request was granted in 2004, reasonable officials in State Defendants Deloy and Kearney's situation would not know that their conduct could present a constitutional violation of Plaintiff's First Amendment rights.

50. Therefore, all State Defendants are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiffs in their individual capacities.

### Eleventh Amendment Immunity - Official Capacities

51. "[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459,

464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

    52.    In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, none of the State Defendants can be held liable in their official capacities.

    WHEREFORE, for the reasons set forth herein, State Defendants respectfully request that this Court grant summary judgment in their favor.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

  /s/ Catherine Damavandi
Catherine Damavandi (ID # 3823)
Deputy Attorney General
State of Delaware
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

Dated: January 17, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHAMSIDIN ALI, a/k/a Robert Saunders,   )<br>                                  )<br>       Plaintiff,          )<br>                                    )<br>       v.                         )   C. A. No. 05-102-\*\*\*<br>                                    )<br>PAUL HOWARD, et al.,        )<br>                                    )<br>       Defendants.        ) | |

***CERTIFICATE OF SERVICE***

The undersigned certifies that on January 17, 2008, she caused the attached Defendants' *Memorandum of Points and Authorities* to be served upon the following:

> <u>*Via first class mail*</u>
> Shamsidin Ali, a/k/a Robert Saunders
> SBI#052590
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE  19977

> <u>*Via electronic service*</u>

| | |
|---|---|
| Kevin J. Connors, Esquire | Eric Scott Thompson, Esquire |
| Marshall, Dennehey, Warner, Coleman & Goggin | Marshall, Dennehey, Warner, Coleman & Goggin |
| 1220 N. Market St., Suite 500 | 1220 N. Market St., Suite 500 |
| P.O. Box 8888 | P.O. Box 8888 |
| Wilmington, DE 19899 | Wilmington, DE 19899 |

> **STATE OF DELAWARE
> DEPARTMENT OF JUSTICE**
>
>   /s/ Catherine Damavandi_____
> Catherine Damavandi (ID # 3823)
> Deputy Attorney General
> State of Delaware Department of Justice
> 820 N. French Street, 6th Floor
> Wilmington, DE 19801
> (302) 577-8400
> Attorney for State Defendants