James t. Vaughn Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977
July 10, 2008


Mr. Kevin J. Connors
Attorney at Law
Post Office Box 8888
Wilmington, DE   19899-8888

    RE: Shamsidin Ali,a/k/a Robert Saunders, v. Howard, et al.
        Civil Action No. 05-102-SLR
        Denial Medical Treatment

Dear Mr. Connors:

    Over month period submitted four sick-call request, todate, each has been ignored. Have arrived at conclusion, confirmed by indivdual working in medical. Sick-call request overlooked, as result involvement with momitoring team and other addressing the health care issues of corrections.

    I have attempted address issue via grievance and personal letters too involved parties. Have been advised should seek additional legal assistance. The issue concerning legal/personal problem still remains unaddressed. As previously stated lack of aforemention, has caused dely in addressing outstanding motions.

Sincerely,

*Shamsidin Ali*

Shamsidin Ali, 052590
a/k/a/ Robert Saunders

SA:sa

cc:   Clerk of the Court
      Eileen Kelly, Esquire



FILED
JUL 1 4 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

MEMORANDUM

TO:     Joshua W. Martin, III, Esquire

FROM:   I/M Robert Saunders, 052590

DATE:   June 28, 2008

RE:     FINDINGS OF FACT - MEDICAL ISSUES DELAWARE CORRECTIONAL CENTER

   A. Background

   1. Over the past 30 years, the Delaware correctional system system has undergone a vast expansion in size and complexity. Currently the Delaware Department of Corrections ("DOC") has approximately 7500 inmates and over 2,000 employees. This rapid growth of the correctional system was not accompanied by organizational restructuring to meet increasing system demands and that it requires fundamental reform in a variety of areas, including management structure, information technology and health care services in order to fu7nction effectively and in compliance with basic constitutional standards.

   2. A prevailing lack of accountability within Delaware's struggling correctional system has resulted in a failure to correct basic problems and an increase in tell-tale signs of dysfunction.

   3. In the area of health care services, the consequences of system expansion without refoAm have been shocking. The Department annual health care budget has risen to over $26 million. The DOC spending on health care is so poorly managed, however, that this increase in budget has been tantamount to throwing good (taxpayer) money after bad.

JOSHUA W, MARTIN, III ESQUIRE
Page 2
June 28, 2008

  B. Correctional Medical Services Failure to Provide Constitutionally Adequate Medical Care has Caused Inmates Extreme Harm

4. As set forth in their report, the Monitoring Team concludes that Correctional Medical Services failure to implement the required remedies has the effect of placing DOC inmates at serious risk of harm or death.

  (1) Lack of Medical Leadership

5. The leaders of the Correctional Medical Services ("CNS") medical system lack the capability and resources necessary to deliver adequate health care, much less fix the abysmal system that now exist.

6. Futhermore, staff do not have the tools they need to handle the vast quantity of information necessary to manage 26 million dollars, 7000 inmate system.  CMS's system for managing appointments and tracking follow-up does not work.  These data management failures mean that staff cannot find and fix systemic failures or inefficiencies. As just one of innumerable examples, there are patients in the infirmary who need specialized housing, but CMS does not track them and their headquaters staff is unaware of how many specialized beds are needed.

7. CMS is aware of the actions required to improved the prison health care system. but its leaders have not been able to address issues requiring systemic change.  CMS leadership simply has been - and presently  is incapable of successfully implementing systemic change or completing even minimal goals toward the design and implementation of a functional medical delivery ststem.

JOSHUA W. MARTIN, III, ESQUIRE
Page 3
June 28, 2008

    (2) **Lack of Qualified Medical Staff**

    8.   The utilization of those trained to be nurse assistances as license practical and registered nurses creates a problem which possibly has and will continue to result in inmate deaths. It is the norms not to have registered nurses on either 4:00 p.m. to 12:00 a.m. shifts or 12:00 a.m. to 8:00 a.m. shifts. Both DOC and CMS lacks anadequate system to manage and supervise medical care.

    **C.   Physicians**

    9.   CMS sorely lacks sufficient qualified physicians to provide adequate patient care to inmates. While there certainly are some competent and dedicated doctors working within the system, they are unable to service even a fraction of the entire inmate population. Many other CMS physicians are inadequately trained and poorly qualified, as, for many years and currently, CMS does not have appropriate criteria for selecting and hiring doctors. CMS seems to hire any doctor who has "a medical degree, a pulse and pair of shoes". The DOC failure to address incompetence and indifference of these CMS physicians has directly resulted in an unacceptably high rate of patient death and morbidity.

    10.   Inspite of contractual arramge,emt with CMS, under Title 11 section 6536 Medical care ultimately rest with Department of Corrections. Inadequate medical care in DOC is due not merely to incompetence but, at times, to unprecedented gross negligence. Indeed, the evidence from multiple sources establishes that medical care too often sinks below gross negligence to outright cruelty.

JOSHUA W. MARTIN, III, ESQUIRE
Page 4
June 28, 2008

### D. Death Reviews

11. Death reviews would provide a mechanism for medical delivery systems to identify and correct problems. These reviews would determine whether there has been a gross deviation from the adequate provision of care and whether the death was preventable. These reviews should be conducted even when death is expected, such as with terminal conditions, to determine if appropriate care has been provided.

### E. Morbidity

12. The lack of adequate care in prisons also has resulted in a significant degree ofmorbidity to inmate-patients. Morbidity is defined as any significant injury, harm or medical complication that falls short of death. The lack of leadership and supervision has resulted in a failure to correct the myriad problems within CMS medical clinics. Such unaddressed problems have made the provision of adequate medical care impossible and clearly have resulted in inmate deaths.

13. A further result of this non-supervision is that doctors responsible for inmate death and morbidity receive little if any discipline from supervising physicians. Beyond the obvious problem of condoning malpractice and allowing incompetent medical staff to remain on staff, the leadership vacuum and lack of discipline also fosters a culture of non-accountability and nonprofessionalish whereby "the acceptance of degrading and humiliating conditions [becomes] routine and permissible."

JOSHUA W. MARTIN, III, ESQUIRE
Page 5
June 28, 2008

14. No organization can function for long when such a culture festers within it, and it has become increasingly clear to the public that this is a major factor in the current crisic.

### F. CMS Lack the Capacity to Recruit Qualified Personnel For Key Medical Positions

15. CMS suffers from a significant vacancy rate in critical positions within the medical care line-staff. There is high vacancy rate for physician and registered nurse positions, and this does not account for the additional significant percentage of incompetent doctors who need to be replaced. Yet the DOC has failed to pay heed to the doctor and the nurse staffing crisis continues unabated. There lack board-certified or board-eligible family practitioners or internist.

### G. Intake Screening and Treatment

16. The present, intake process involves only a brief medical eaminations, fails to adequately indentify and treat the health care problems of new inmates. This intake process is suppose to allow medical staff to identify the medial problems, in particular communicable diseases such as syphillis and tuberculosis, that pose risk of transmission to other inmates. An adequate intake exam should take fifteen to twenty minutes for a young healthy inmate and thirty to forty minutes for inmates with more complicated health porblems. However, inmate exams in the receiving room typically last no more then seven minutes. Futher, some inmates are removed from the reception process before their examination is complete and do not receive medical screen or care until weeks later.

JOSHUA W. MARTIN, III, ESQUIRE
Page 6
June 28, 2008

17. Following the nurse's examination, inmates do not undergo an examination by a physician.

**Medical Records**

18. The medical records in DOC prisons are either in a shambles or non-existent. This make even mediocre medical care impossible. Medical records are an essential component of providing adequate in-mare care and should contain comprejensive information about a inmate that can assist a physician in determing the inmate's history and future treatment. The amount of unfiled, disorganized, and literally unusable medical records paperwork within DOC prisons is staggering.

H. Chronic Care

19. A sizable portion of DOC inmates suffer from chronic illness, yet CMS have failed to devise and implement a system to track and treat these inmates, and such inmates suffer from a lack of continuity of care. Often, chronic care inmates called to infirmary, only not to be seen by anyone. Informed doctor eith not hear or not seeing anyone else.

I. Specialty Service

20. CMS has failed ot provide inmates with necessary specialty services. Inmates with very serious medical problems often wait extended periods of time before they are able to see a specialist due to unnecessary and preventable delays. Often, told will have to wait until approved by regional office.

The only manner in which aforemention issues will be addressed in proper manner, with the instituting of federal litigations. The DOC and CMS could care less what happens to inmates and hjstorically

JOSHUA W. MARTIN, III, ESQUIRE
Page 7
June 28, 2008

proven same. In 2000 hospice legislation signed into law, yet DOC or its medical providers yet to provide program. Since 2000 over 125 inmates have died, not provided hospice care.

RS:rs
xc: Umbreen S. Bhatti, Esq.
    Cathleen Trainer, Esq. U.S. Department of Justice
    Jim Welch, Medical Adminstrator - DOC
    Karen Peterson, State Senator
    Margaret Rose Henry, State Senator
    Nancy Cook, State Senator
    Clifford Lee, State Representative
    Hazel Plant, State Representative
    Ronnie Moore, Medical Adminstrator - CMS
    Esterban Parra, Reporter - News Journal

## MEMORANDUM

TO: David Pierce, Deputy Warden - JTVCC

FROM: I/M Robert Saunders, 052590 S-1 (F-10)

DATE: July 7, 2008

RE: **RETALIATORY ACTION BY CORRECTIONAL MEDICAL SERVICE**

On four occassions submitted sick call request, one to Ronnie Moore, Healthcare Administratior - CMS. It seem one's request constantly ignored. It's been alleged aforemention directly related to my involvement with below:

> Joshua W. Martin, Esquire
> Monitoring Team Coordinator
>
> Cathleen Trainer, Esquire
> Civil Rights Division - U.S. Justice Dept.
>
> Umbreen S. Bhatti, Esquire
> ACLU - Delaware

Plus involvement with several lawyers, involved with litigation against CMS. There also the issue my personal litigation against same. There were three occassions scheduled be seen here by outside kidnye specialist. One occassion had visit, another doctor didn't show and other never called.

It was substantiated by Dr. Paul D. Richards, Urologist on January 10, 2008, complex cystic - 2.5 cm on left kidney. As result of MIR Brain, determined by Dr. Michael Ramjattansingh, Neurologist have chronic lacunar lesions in the left basal ganglia and the left thalamus, medication prescribed provided on two occassions. Inspite medication prescribed indefinite, yet to be renewed. There lack continued treatment ordered by Dr. Thomas Burke, Dermatologist, still plaqued with pruriconodules and spunbiotic dermatitis.

The lack of treatment prescribed is clear case of deliberate indifference and medical neglect.

RS:rs
Encl.
cc: Joshua w. Martin, III Esquire
    Cathleen Trainer, Esquire
    Umbreen S. Bhatti, Esquire

Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977
June 7, 2008


Commissioner Carl Danberg
Department of Corrections
245 McKee Road
Dover, DE  19904

RE:  **MEDICAL ISSUES**

Dear Commissioner Danberg:

On three occassion have attempted to resolve via grievances.  The most recent "Grievance #157450, dated 04/29/08.  Dr. Thomas Burke, Dermatologist, treated for prurigo nodules and spongiotic dermatitist.  Dr. Bruke, prescribed "Ammonium Lactate Cream, 12% to be used for one year.  Have received aforemention twice, it was reordered by Dr. F. VanDusen in April 2008, yet to receive , and ordered by Dr. Oketokum the later part of May 2008, still have not received same.  The lack of medication result in the spreading of prurigo nodules, and massive discoloration of skin.

Prior commencing addiitonal litigation, deemed it proepr attempt resolve in another manner.  The lack receiving medication and mediciation refills result fof incompetence and feeling lack of accountability by certain medical staff.  It has been substantiated many "Correctional Medical Services" employees at this facility, assigned medical duties not qualified ro have required formal training.  The majority trained as nurse assistances, ahndling task designated for either license practial or registered nurses.

A lot are immigrants, which rasise question of formal training an certification in specific areas.  There is contant problem with inmate receiving medication refills in timely manner.  Dr. Oketokum, increased blood pressure medication in May 2008, yet still to receive same.  Even tho their contractual services for medical services for inmates, the aforemention still rest with department of corrections.

Sincerely,
Robert Saunders, 052590

RS:rs
xc:  Joshua W. Martin, III, Esq.
     Cathleen S. Trainor, Esq. - U.S. Department of Justice
     Kevin J. Connors, Esq.
     Eileen Kelly, Esq.
     Ronnie Moore, Medical Administrator - CMS (DCC)

Shamsidin Ali, a/k/a/
I/M Robert Saunders
SBI# 05290  UNIT S-1
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S.M.S. X-RAY

Clerk of the Court
U. S. District Court
J. Caleb Boggs Federal Building

844 N. King Street

Wilmington, DE            19801