## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAMSIDIN ALI, A/K/A ROBERT SAUNDERS, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. No.  05-102-SLR-LPS |
| : | |
| PAUL HOWARD, WARDEN RICK KEARNEY,  : | JURY TRIAL DEMANDED |
| DEPUTY WARDEN MIKE DELOY, : | |
| S/LT. EARL MESSICK, S/LT. JOSEPH : | |
| JOHNSON, CPL. FISHER, WARDEN : | |
| THOMAS CARROLL, CORRECTIONAL : | |
| MEDICAL SERVICES, JANE MORGAN, : | |
| ANTHONY RENDINA, CAPTAIN C. SEGARS,  : | |
| and COMMISSIONER STANLEY TAYLOR, : | |
| : | |
| Defendants. : | |

## REPORT AND RECOMMENDATION AND
## ORDER REGARDING VARIOUS MOTIONS

## I.  INTRODUCTION

The plaintiff, Shamsidin Ali a/k/a Robert Saunders ("Plaintiff" or "Ali"), is a state

prisoner committed to the custody of the Delaware Department of Correction ("DOC"), currently

incarcerated at the James T. Vaughn Correctional Center, formerly known as the Delaware

Correctional Center ("DCC"), which is located in Smyrna, Delaware. Ali, proceeding *pro se*,

initially filed this suit on February 22, 2005. (Docket Item ("D.I.") 1)  At the time, Ali was

incarcerated at the Sussex Correctional Institute ("SCI") in Georgetown, Delaware.  Plaintiff later

filed amended complaints on September 19, 2005 (the "Supplemental and Second Amended

Complaint") (D.I. 19) and December 13, 2006 (the "Amended Complaint") (D.I. 135) to clarify

the claims raised in his civil rights action filed pursuant to the provisions of 42 U.S.C. § 1983,

for alleged violations of his First, Eighth, and Fourteenth Amendment rights, as well as for alleged violations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794.[1] By his amendments, Ali also sought to add new defendants.[2]

On December 15, 2006, Judge Jordan, to whom this case had been assigned, was elevated to the U.S. Court of Appeals for the Third Circuit, and this case was assigned to the judicial vacancy. (D.I. 99) On February 1, 2008, the case was reassigned to Judge Sue L. Robinson and then, on February 11, 2008, referred to me. (D.I. 205)

Pending before the Court is a motion for summary judgment filed by defendant Correctional Medical Services, Inc. ("CMS") (D.I. 190)[3] as well as a motion for summary judgment filed by defendants SCI Warden Rick Kearney ("Kearney"), Deputy Warden Mike Deloy ("Deloy"), Staff Lt. Earl Messick ("Messick"), Staff Lt. Joseph Johnson ("Johnson"), Correctional Cpl. Jeffrey Fisher ("Fisher"), DCC Warden Thomas Carroll ("Carroll"), Correctional Officer Jane Morgan ("Morgan"), DOC Commissioner Stanley Taylor ("Taylor"),

---

[1] While Ali generally asserts that defendants have also violated Delaware state law, he has not specified which one. It appears most likely that he is attempting to state a claim for medical malpractice, but Delaware law requires a medical malpractice plaintiff to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citation omitted); *see also* 18 Del. C. § 6801(7). Plaintiff has not produced any such evidence.

[2] Ali attempted to add claims against two new defendants – Ihuema Chuks ("Chuks") and Crystal Austin ("Austin") – but the Court has stricken the paragraphs relating to these two individuals and has not given leave to add these new parties. (D.I. 134)

[3] Defendant Correctional Medical Services, Inc. is sometimes improperly referred to by Plaintiff as "Correctional Medical Systems."

2

Inmate Classification Administrator for the Bureau of Prisons Anthony J. Rendina ("Rendina"), and Chief of the Bureau of Prisons Paul Howard ("Howard") (collectively the "State Defendants") (D.I. 195).[4]

Also before the Court are three CMS motions to dismiss: a June 2006 Motion to Dismiss Plaintiff's Complaint (D.I. 60), a September 2006 Motion to Dismiss Plaintiff's Amended Complaint (D.I. 76), and a June 2007 Amended Motion to Dismiss Plaintiff's Amended Complaint (D.I. 151) (collectively, "CMS' Motions to Dismiss"). Finally, the Court must consider several motions filed by Plaintiff: a Motion to Compel Defendant Jane Morgan to Respond to Plaintiff's Admissions (D.I. 159) ("Motion to Compel"), Plaintiff's Motion to Amend the Amended Complaint (D.I. 160) ("Motion to Amend"), and Plaintiff's July 2007 and August 2008 Motions for Temporary Restraining Order/Preliminary Injunction ("TRO/PI Motions") (D.I. 162, D.I. 214).

For the reasons that follow, I recommend that Defendant CMS' Summary Judgment Motion and the State Defendants' Summary Judgment Motion be granted. I further recommend that Defendant CMS' Motions to Dismiss and Plaintiff's TRO/PI Motions be denied as moot. Finally, I will deny as moot Plaintiff's Motion to Compel as well as his Motion to Amend.[5]

---

[4]While Plaintiff filed a response with attachments (D.I. 193, 194) to the CMS Summary Judgment Motion, Plaintiff did not respond to the State Defendants' Motion for Summary Judgment (D.I. 195).

[5]Pursuant to the February 11, 2008 referral order (D.I. 205), as well as 28 U.S.C. § 636, my authority with respect to the case-dispositive motions for summary judgment, to dismiss, to amend the complaint, and for a TRO/PI is limited to issuing a Report and Recommendation. With respect to the non-dispositive motion to compel my ruling is an order of the Court.

3

## II.    BACKGROUND[6]

Plaintiff's Amended Complaint recites a litany of events and alleged constitutional and other violations occurring during his incarceration at SCI and DCC. Counts I and III of the Amended Complaint allege that Ali was subjected to illegal censoring of his legal and personal mail, in that his incoming and outgoing mail was opened, read, and re-taped closed, outside his presence, in violation of his First Amendment rights. (D.I. 135 at ¶¶ 18-25, 37-41) Ali alleges that such improper actions were taken "in concert" by State Defendants Kearney, Deloy, Messick, Johnson, and Fisher while Ali was at SCI; he alleges this practice began in June 2004 in retaliation for Ali's prolific filing of grievances and complaints with outside parties concerning various racial, religious, and medical issues. (Id. at ¶¶ 19, 22, 39-41) Ali alleges that State Defendant Morgan of DCC "rifl[ed] through plaintiff's legal and personal items selecting which legal papers, books and research materials she deemed proper for plaintiff to have." (Id. at ¶ 43)[7] On account of such alleged transgressions, Plaintiff seeks punitive damages from the SCI State Defendants. (Id. at ¶ 25)[8]

---

[6]Where there are disputes of fact, all reasonable inferences are drawn in plaintiff's favor. As is evident from my recommendation to grant summary judgment, I do not believe there are genuine disputes of material fact.

[7]This allegation appears in Count IV of the Amended Complaint.

[8]Count I further charges that Ali was reclassified to another prison facility even though this was known to have an adverse effect upon his medical conditions of high blood pressure and degenerative disc disease. (D.I. 135 at ¶ 24) By Order dated February 1, 2006, this Court dismissed that portion of Count I that "allege[d] a constitutional violation on the basis of Ali's reclassification/transfer from SCI to DCC." (D.I. 24) The Court will therefore not address any allegations that Plaintiff's reclassification or transfer constituted unconstitutional retaliation, including those allegations against State Defendants Kearney and Deloy. (D.I. 196 at ¶¶ 28, 31; D.I. 197 at 46-47)

Counts II and IV of the Amended Complaint allege that Ali, as a qualified individual under the ADA and the Rehabilitation Act, was denied reasonable accommodation for his physical disabilities.  (*Id.* at ¶¶ 26-36, 42-45)[9]  In particular, Plaintiff claims that he suffers from "degenerative disc disease, chronic lesions in the left basal ganglia and left thalamus of the brain, severe blood pressure problems, suffered silent stroke, heart murmur, Achilles tendon problems and severe headaches" and, yet, he has been "deprived of [a] cane since June 10, 2005; served ice cold diet trays three times per day; assigned to second floor, which requires walking a distance equivalent to a city block; and secured by waist chain and shackles for visits and interviews." (D.I. 135 at ¶¶ 28, 31, 33)  Counts II and IV further allege violations of Ali's right to be free from Cruel and Unusual Punishment pursuant to the Eighth Amendment.  Ali alleges that he submitted multiple sick call requests which were ignored, and that he filed grievances with defendants CMS and Carroll regarding certain medical problems and their failure to address his sick call requests. (*Id.* at ¶¶ 32, 43-44)  Ali also asserts that while incarcerated he contracted a Methicillin-Resistant Staphylococcus Auerus ("MRSA") infection that was allowed, without medical treatment, to spread until abscesses covered 70% of his body.  (*Id.* at ¶ 45)  Ali claims that State Defendants Carroll, Rendina, Howard, and Taylor were aware of these medical treatment issues but failed to address them.  (*Id.* at ¶¶ 35, 43)[10]  Plaintiff requests injunctive relief to prevent further violations

---

[9]The provisions of the Americans with Disabilities Act and the Rehabilitation Act are applicable to state prison programs, so prisoners can be qualified individuals entitled to protection under these Acts.  *See Yeskey v. Commonwealth of Pa. Dep't of Corrections*, 118 F.3d 168 (3d Cir. 1997), *aff'd* 524 U.S. 206 (1998); *see also United States v. Georgia*, 546 U.S. 151 (2006) (ADA validly abrogates state sovereign immunity insofar as it creates a cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment).

[10]Plaintiff further asserts these claims against Captain C. Segars, the DCC Building 21 Supervisor, but Segars' summons with respect to the Supplemental and Second Amended

5

of his rights under the ADA and Eighth Amendment. (*Id*.)[11]

CMS moves for summary judgment on the following grounds: Plaintiff has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a); Plaintiff cannot demonstrate defense conduct of deliberate indifference to serious medical needs; a § 1983 action cannot be maintained against CMS under a theory of respondeat superior; and Plaintiff cannot prove any set of facts to demonstrate that CMS had a policy or custom that led the medical staff to deprive Plaintiff of necessary medical care.

The State Defendants move for summary judgment on the following grounds: that they are entitled to Eleventh Amendment immunity in their official capacities; Plaintiff failed to exhaust his available administrative remedies pursuant to the PLRA; a § 1983 action cannot be maintained against State Defendants Fisher, Taylor, and Carroll under a theory of respondeat superior; Plaintiff failed to make any specific allegations of wrongful acts taken by State Defendants Kearney, Deloy, Johnson, Rendina, Messick, Morgan, and Howard; there are no genuine issues of material fact as to the alleged tampering with Plaintiff's mail; Plaintiff cannot demonstrate a violation of the ADA and Rehabilitation Act; Plaintiff cannot demonstrate conduct of deliberate indifference to serious medical needs; and all named State Defendants are entitled

---

Complaint was returned as unexecuted (D.I. 32), and he was never served with the Amended Complaint. Therefore, as this Court has previously stated, Segars is not a party to this action. (D.I. 182)

[11]Ali has also sought monetary damages from DOC to compensate him for its alleged failure to make reasonable accommodations for his physical disabilities and denial of access to sick call. (*Id*. at ¶ 36) However, on June 6, 2006, Plaintiff voluntarily filed a "Motion to Delete" (construed by the Court as a Motion to Dismiss) to dismiss DOC as a defendant (D.I. 52), which the Court granted (D.I. 57).

to qualified immunity.  Both summary judgment motions also emphasize the undisputed
evidence regarding the extensive amount of medical treatment Ali has received.

Because there is no genuine issue of material fact with respect to any of Ali's claims on
the merits, and defendants are entitled to judgment as a matter of law, I will only address some of
defendants' multiple defenses.

## III.    LEGAL STANDARDS

### A.    Section 1983 Standard

In a § 1983 action, the plaintiff must prove two essential elements to prevail: (1) the
conduct complained of was committed by a person acting under color of state law, and (2) the
conduct deprived the plaintiff of a federally secured right.  *See West v. Atkins, 487 U.S. 42, 48*
*(1988); see also Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).  Section 1983 is not a
source of substantive rights.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  Rather, it
is a means to redress violations of federal law by state actors.  *Id*.; *see also Holocheck v. Luzerne*
*County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-99 (M.D. Pa. 2005).

### B.    Summary Judgment Standard

A grant of summary judgment is appropriate only where "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to judgment
as a matter of law."  Federal Rule of Civil Procedure 56(c).  The moving party bears the burden
of demonstrating the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co.,*
*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  The "mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (internal citation and quotation marks omitted).

## IV.    DISCUSSION

### A.    Individual Versus Official Capacity

The Court must first determine whether Ali's claims against the State Defendants are brought against the State Defendants in their official capacity only or also in their individual capacity. "The Third Circuit is among a majority of federal circuit courts which employ a 'course of proceedings' test to determine whether a plaintiff in a § 1983 action may proceed with both an official and individual capacity suit when it is unclear what his intentions are from his complaint." *Casilla v. New Jersey State Prison*, 2006 WL 2534416, at *7 (D.N.J. Aug. 31, 2006). Under the "course of proceedings" test, courts are not limited by the presence or absence of language identifying capacity to sue on the face of the complaint alone. Rather, courts may examine "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability." *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). Relevant factors under such an analysis include "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response

8

to the complaint, particularly claims of qualified immunity." *Moore v. City of Harriman*, 272

F.3d 769, 772 n.1 (6th Cir. 2001). The "underlying inquiry remains whether the plaintiff's

intention to hold a defendant personally liable can be ascertained fairly." *Biggs v. Meadows*, 66

F.3d 56, 61 (4th Cir. 1995).

While the caption of the Amended Complaint lists most of the individual defendants'

names with their job titles, and describes their governmental positions within the text of the

complaint, it appears that Plaintiff intended to name the SCI State Defendants personally as well

as in their official capacity. I reach this conclusion because Plaintiff seeks punitive damages

from those defendants (D.I. 135 at ¶ 25), which are unavailable when proceeding against an

official only in an official capacity. Also, the State Defendants have pled qualified immunity.[12]

Granting the *pro se* Plaintiff the benefit of the doubt, I will analyze the claims against the State

Defendants as if they are brought against these individuals in both their official and individual

capacities.

## B.    Eleventh Amendment Immunity

The State Defendants move for summary judgment from liability in their official

capacities pursuant to the Eleventh Amendment to the United States Constitution, arguing that it

proscribes suit against them because they were at all times acting in their official capacity as state

prison employees. The Eleventh Amendment shields states from suits by individuals absent a

---

[12]A public official is entitled to qualified immunity and protected from liability for civil
damages if the official's "conduct does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known." *Good v. Dauphin County Soc. Servs.
for Children and Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). "Qualified immunity insulates
government officials performing discretionary functions from suit insofar as their actions could
reasonably have been thought consistent with the rights they are alleged to have violated."
*McKee v. Hart*, 436 F.3d 165, 169 (3d Cir. 2006) (internal quotation marks omitted).

9

state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Thus, Section 1983 claims for monetary damages against a state or a state official in his official capacity are barred by the Eleventh Amendment. *See id.* However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

Here, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, I recommend that the Court grant the State Defendants' request for summary judgment to the extent that Plaintiff seeks monetary damages from all State Defendants in their official capacities, as such defendants are entitled to absolute immunity from such claims pursuant to the Eleventh Amendment.

### C.    First Amendment Claims

#### 1.    Interference with Mail

Counts I and III of the Amended Complaint allege that Ali is entitled to punitive damages for his subjection to illegal censoring of legal and personal mail in violation of his First Amendment rights. (D.I. 135) Ali alleges that these actions were taken by State Defendants Kearney, Deloy, Messick, Johnson, and Fisher at SCI and that such defendants acted "in concert" to violate Plaintiff's constitutional rights. (*Id.* at ¶¶ 19, 22, 39-41)

"In the First Amendment context, . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974). Prison inmates have no expectation of privacy regarding their personal mail. *See Hamilton v. Messick,* 2005 WL 736684, at *3 (D. Del. Mar. 31, 2005) (upholding inspection of outgoing mail); *Smith v. Boyd,* 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding the inspection of incoming mail). Legal mail is treated differently, provided it is "marked with an attorney's name and an indication that the person is an attorney, and the front of the envelope is marked 'Special Mail-Open only in the presence of the inmate.'" *Vaughn v. Schoapt,* 2007 WL 3274189, at *1 (W.D. Pa. Nov. 5, 2007).

Here, Ali explained in his deposition that his dissatisfaction with the prison mailroom stemmed from "about five or six" letters that were opened outside his presence. (D.I. 197 at 22) Ali does not allege that these letters were legal mail and there is no evidence that they were legal mail.[13] At his deposition, Ali stated that the letters were from "Senator Henry," "Senator Peterson," and "United States Representative Elijah Cummings." (D.I. 197 at 23-24) These are not attorneys representing plaintiff in a legal matter.

Moreover, it is undisputed that in 2004 Ali was caught violating a DOC prohibition relating to inmate communications when he sent correspondence to a fellow inmate through his daughter. (D.I. 196 at ¶ 10) Ali was disciplined and advised that henceforth his personal mail

---

[13]In his Amended Complaint, Ali alleges vaguely that Defendant Morgan, a DCC property room officer, "rifl[ed] through plaintiff's legal and personal items selecting which legal papers, books and research materials she deemed proper for plaintiff to have." (D.I. 135 at ¶ 43) There is no other mention of Morgan in the Amended Complaint. At his deposition, Ali stated that Morgan was not involved with opening his mail. (D.I. 197 at 40)

11

would be checked to prevent future violations. (*Id.*) Ali was told that "[a]ll mail being sent to the courts and/or attorneys will not be searched as long as [it is] clearly marked as 'Legal Mail' and addressed as such." (*Id.*) There is simply no evidence that the opened letters were marked in such a manner.

Accordingly, the State Defendants alleged to have interfered with Ali's mail in violation of his First Amendment rights are entitled to judgement as a matter of law. I recommend that the State Defendants' Summary Judgment Motion be granted with respect to these First Amendment claims.[14]

## 2. Retaliation

Relatedly, Ali alleges that the opened mail violated his First Amendment rights because it was undertaken in retaliation for his filing of grievances and complaints with outside parties concerning various racial, religious, and medical issues. The First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Ali demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Here, even taking the evidence in the light most favorable to Plaintiff, Ali cannot satisfy the third of these requirements. No reasonable juror could conclude that Ali's grievances and

---

[14]To the extent Plaintiff is asking the Court to instruct State Defendants Taylor, Carroll, and Morgan to make certain personal effects available (D.I. 135), it appears that the Court already addressed this issue by Order dated March 30, 2007 (D.I. 133), denying his motion for return of personal property (D.I. 67).

complaints were a substantial motivating factor in the State Defendants' decision to open Ali's mail. Instead, as explained above, the evidence is that the State Defendants decided to open Ali's personal mail – and not his legal mail – in response to Ali's violation of DOC's prohibition on using the mail to communicate with fellow inmates. In this way, the State Defendants' action was for a permitted penological purpose and not an unconstitutional retaliation.

### 3. Conspiracy

Although not clearly or specifically pled, Ali appears to allege that defendants engaged in a conspiracy to violate his constitutional rights in contravention of 42 U.S.C. § 1985. He claims there was a "campaign of infringement" such that "[i]n concert, the defendants infringed upon the Plaintiff's First Amendment Rights as retaliation for the plaintiff's complaints about racial disparities in inmate treatment . . . improper medical care . . . and religious issues." (D.I. 135 at ¶¶ 40, 41) Because Ali is a *pro se* litigant, the Court has an obligation to construe his submissions liberally, so I will address the conspiracy allegation.

Section 1985(3) provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To establish a prima facie case under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999).

In the instant matter, however, for the reasons explained above, there is no evidence that the State Defendants' decision to open Ali's personal mail was motivated by any discriminatory animus. Therefore, this claim, too, fails.

## D.     Claims under the ADA and Rehabilitation Act

Counts II and IV of the Amended Complaint allege that Ali, as a qualified individual under the ADA and the Rehabilitation Act, was impermissibly denied reasonable accommodations by the DOC. (D.I. 135) Plaintiff alleges that he walks with the assistance of a cane and "has been deprived of cane since June 10, 2005; served ice cold diet trays three times per day; assigned to second floor, which requires walking distance equivalent to a city block; and secured by waist chain and shackles for visits and interview." (D.I. 135 at ¶¶ 24, 31, 33)

A plaintiff alleging a disability claim must show that "1) he is a qualified individual; 2) with a disability; 3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; 4) by reason of his disability." *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

Even taking the evidence in the light most favorable to Ali, he has failed to produce evidence from which a reasonable juror could conclude that he is a disabled "qualified individual" under the ADA or the Rehabilitation Act. A qualified individual must have a "disability," which is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Similarly, the Rehabilitation Act defines an "individual with a disability" as, *inter alia*, any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29

14

U.S.C. § 705(20)(B).

Ali testified that he is able to walk without the assistance of a cane and does not use it all of the time. (D.I. 197 at 31) He walked about one block to the deposition and did not bring his cane to the deposition because he had "a habit of forgetting it." (*Id.*) Thus, the evidence does not provide a basis from which a reasonable juror could conclude that Plaintiff was disabled due to his walking ability.

Plaintiff fares no better with respect to his other ADA and Rehabilitation Act claims. Plaintiff alleges that he was discriminated against because by the time his breakfast was served in the morning, the "butter wouldn't melt on the french toast or the pancakes" and "sometimes we didn't [get] coffee." (D.I. 197 at 35) But receiving a cold breakfast is not an exclusion "from participation in or [denial of] the benefits of the services, programs, or activities of a public entity, or [subjection] to discrimination by [Defendants] by reason of [Plaintiff's] disability." *Bowers,* 475 F.3d at 553 n.32. Thus, the State Defendants are entitled to judgment as a matter of law with respect to these complaints.

Moreover, to the extent Ali is proceeding against the State Defendants in their individual capacity, they are entitled to summary judgment, because individuals are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to such a suit. *See generally Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (recognizing that "the Rehabilitation Act and the ADA generally are interpreted consistently").

## E. Eighth Amendment Claims Regarding Medical Treatment

Nor has Ali created a record from which a reasonable juror could conclude that he was deprived of medical treatment in violation of his Eight Amendment right to be free from Cruel

15

and Unusual Punishment.  Ali claims inadequate provision and denial of medical care.  However, the pleadings and Ali's testimony confirm that he has received treatment for his various ailments. While Ali may not like the care he received, his disapproval does not constitute a constitutional violation.

The Eighth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment.  In a prison setting, the Eighth Amendment requires that prison officials provide inmates with adequate medical care.  *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).  To prove a violation of his Eighth Amendment rights, an inmate must demonstrate: (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  *See id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may also manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable.  *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, even if the inmate believes that more should be done by way of diagnosis and treatment.  *See Estelle*, 429 U.S. at 107.  "[M]ere disagreement as to the proper medical treatment" is insufficient to establish a constitutional violation.  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (internal citations omitted); *see also Norris v. Frame*, 585 F.2d

1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, the inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."); *Smullen v. Kearney,* 2003 WL 21383727, at \*3 (D. Del. June 13, 2003) (when some care has been provided, questions as to the adequacy or propriety of the care will not support an Eighth Amendment claim, as courts will not second-guess a course of treatment).

Likewise, allegations of medical malpractice are insufficient to establish an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) ("[M]ere negligence in diagnosing or treating a medical complaint does not state a claim for deliberate indifference.").

Plaintiff complains that his sick call slips and grievances were ignored and that he was constantly denied medication and treatment despite repeated requests. He further alleges that he filed multiple grievances with CMS for failure to address his sick call slips. (D.I. 135 at ¶¶ 32, 44) The evidence, however, belies Plaintiff's contentions of inattention and denial of treatment. As described in greater detail below, the uncontroverted evidence shows that Plaintiff received ongoing medical treatment. Since some care was provided and the only dispute is about the extent and efficacy of that treatment, plaintiff has failed to state a constitutional violation.

### 1. Skin Condition

In this Court's Memorandum Order of March 30, 2007 (D.I. 134), the Court noted that Plaintiff had, in fact, received medical treatment for his skin condition and noted that Ali had not demonstrated a likelihood of success on the merits to warrant injunctive relief. Specifically, the Court observed and found the following:

> The supplemental and third amended complaint alleges that plaintiff

17

noticed a developing skin condition during September 2005, and that he was seen between September 2005 and December 2005 by employees of CMS and given creams to treat the condition.

[Ali] sought immediate access to a dermatologist . . . his prescriptions for medications to be immediately filled, and for a third-party dermatologist to enter the prison to culture, diagnose, and treat MRSA.  (D.I. 86)

Medical records indicate plaintiff received medical treatment for his skin condition on June 19, 2006, June 27, 2006, July 17, 2006, September 11, 2006, October 24, 2006 (D.I. 93).  Also, two requests for [dermatological] consultations were made; one on October 10, 2006, and the other on November 9, 2006.  Id.  Medical records indicate that plaintiff was prescribed various medications to treat his skin condition, and that he received blood pressure medication as prescribed.  Id.  Subsequent medical records filed by plaintiff indicate that he continues to receive medical treatment.  (D.I. 107)

Given the exhibits submitted to the court . . . plaintiff [has not shown irreparable harm, nor] demonstrated the likelihood of success on the merits.

(D.I. 134) (court's paragraph numbers omitted)

The record as it now exists does not aid Plaintiff's case.  Ali has again confirmed the statements made in his complaint that between September 2005 and December 2005 he was seen by employees of CMS and he was given various lotions, creams and medications to treat his skin condition.  (D.I. 135 at ¶ 45; D.I. 193)

Although Plaintiff also complains regarding the timing of a skin biopsy and dermatological consult, the medical records show that on January 4, 2006 a specimen of Ali's skin was sent for analysis, where it was diagnosed.  (*See* D.I. 61 at Ex. 4)  Plaintiff's medical records further indicate that he was seen and treated on a number of occasions following that evaluation.  (*Id.*)  Moreover, while Ali avers in his complaint that a dermatologist should be appointed to determine the extent of his medical condition (D.I. 135 at ¶ 45), Plaintiff later

18

acknowledges in his response to CMS' Summary Judgment Motion that he was seen by an outside dermatologist in January 2007 and that a biopsy was conducted that month. (D.I. 193) Ali's medical records demonstrate that a biopsy was ordered, and that the later January 12, 2007 biopsy indicated "spongiotic dermatitis" with the handwritten notation of an "allergic reaction." (D.I. 193 at Ex. I)

While Ali also asserts that his alleged MRSA infection was allowed to spread, without medical treatment, until abscesses covered the majority of his body (D.I. 135 at ¶ 45), the State Defendants observe that the medical documentation attached to his complaint does not reflect that such a condition was ever diagnosed. The only mention of such an affliction appears in Ali's handwritten sick call requests and medical grievance. At his deposition, Ali was unable to confirm which doctor, if any, diagnosed him with MRSA. (*See* D.I. 197 at 69-71)

By all accounts then, Plaintiff received, and has continued to receive, treatment for his skin condition, whatever the precise nature of that condition may be. While he may believe that more should have been done by way of diagnosis and treatment, his beliefs do not make out an Eighth Amendment violation.

### 2. Blood Pressure

With respect to his blood pressure concerns, Ali's medical records and the Affidavit of Dr. Bruce McFall, attached to CMS' response to Plaintiff's TRO/PI Motion (D.I. 174, Ex.7), indicate that Ali can and has received the appropriate and necessary medical care within DOC's facility. Dr. McFall, as recently as July 16, 2007, evaluated Ali and said that Ali was being prescribed and administered appropriate medications and treatment for his blood pressure. (*Id.*) Ali's own deposition testimony on November 30, 2007 demonstrates that he has failed to

19

establish a viable Eighth Amendment claim against CMS. Specifically, Ali testified that he was on a no-salt diet and that he was receiving medical treatment and taking medications for his blood pressure. (*See* D.I. 190, Ex. A. at 36, 51, 79-81, 95) Additional evidence submitted by Ali indicates that he continues to be treated for this condition. *See, e.g.,* August 3, 2007 Dual Isotope Myocardial Perfusion Study, performed during Plaintiff's visit with Cardiology Consultants in Dover, Delaware (D.I. 169, Ex. 3; *see also* D.I. 163, 167, 168) (Plaintiff's stress test indicated a normal myocardial perfusion scan with no evidence for exercise-induced ischemia and on August 16, 2007, Plaintiff was seen at DCC's infirmary for a follow-up visit and discussed the test results); February 1, 2008 letter to the Court (D.I. 202, 206) (indicating that, despite various complaints, he was seen and evaluated for his blood pressure on January 31, 2008, in response to his sick call).[15]

* * *

In sum, while Plaintiff lists a host of complaints regarding medical treatment and may dispute the type and timing of the medical treatments he received, and complains that he submitted slips for medical treatment, to no avail, the fact remains that Ali did admit in his deposition and in his complaint that he received medical treatment for his various conditions, albeit not to his liking. While such treatment allegedly resulted in pain and visible reactions, this is, at worst, medical malpractice, which is not enough to sustain plaintiff's burden to state or

---

[15]While Ali also alleges that State Defendants Taylor and Carroll specifically failed to demand that CMS address Ali's medical needs (D.I. 135 at ¶ 43), even if true, this is not a constitutional violation. *See, e.g., Pitts v. Hayman,* 2008 WL 1776568, at *5 (D.N.J. Apr. 16, 2008) (that the prison officials did not ensure that the CMS defendants were appropriately and adequately responding to the prisoner's requests for medical attention and specific treatments did not constitute deliberate indifference to medical needs).

20

prove a constitutional violation pursuant to § 1983. *See White v. Napoleon*, 897 F.2d 103,

108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is

not compensable as a Constitutional deprivation). Therefore, I recommend summary judgment

be entered for CMS and the State Defendants on Plaintiff's Eighth Amendment claims.[16]

### F.     Temporary Restraining Order/Preliminary Injunction Motions

Ali has filed two pending motions for a temporary restraining order or preliminary

injunction. In these motions, Ali asserts he is not receiving adequate medical care for several

medical issues, including that he has not had a stress test or consult with a cardiologist and that

he is suffering from a certain skin condition and high blood pressure, as well as that, on two

previous occasions, he experienced temporary paralysis in the right side of his body. (D.I. 162,

163, 170, 214) Plaintiff also expressed concern over his kidney function. (*Id.*)

In order to obtain a TRO or preliminary injunction, one of the elements a party must

establish is a likelihood of success on the merits. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d

700, 708 (3d Cir. 2004). I have already analyzed the merits of each of Plaintiff's claims and, as

explained above, I do not believe he can prevail on any of them. Accordingly, Ali is not entitled

to either a TRO or a preliminary injunction. Therefore, I recommend that the Court deny Ali's

pending TRO/PI Motions.

### G.     Miscellaneous Pending Motions

Because I recommend that summary judgment be granted for CMS and the State

---

[16]Ali has filed various submissions with the Court requesting that his family be allowed to
arrange for a private physician to visit the prison to address his health issues (D.I. 135, 202, 206),
but "a prison inmate has no independent constitutional right to outside medical care additional
and supplemental to the medical care provided by the prison staff within the institution." *Lewis
v. Ryan*, 2008 WL 1944112, at *13 (S.D. Cal. May 1, 2008).

Defendants on all counts of the Amended Complaint, I recommend that CMS' Motions to Dismiss be denied as moot.  Further, I will dismiss Plaintiff's Motion to Compel as moot. Finally, I recommend that Plaintiff's Motion to Amend, which is Ali's fourth proposed amendment, be denied because the proposed amendments would be futile.

## V.    CONCLUSION

For the reasons set forth above:

1.    I recommend that Defendant CMS' Summary Judgment Motion be GRANTED.

2.    I recommend that State Defendants' Summary Judgment Motion be GRANTED.

3.    I recommend that Defendant CMS' Motions to Dismiss be DENIED as moot.

4.    I recommend that Plaintiff's Motions for TRO/PI be DENIED as moot.

5.    It is hereby ORDERED that Plaintiff's Motion to Compel is DENIED as moot.

6.    I recommend that Plaintiff's Motion to Amend Complaint be DENIED as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

The Clerk of the Court is hereby directed to mail a copy of this Report and

22

Recommendation and the standing order referred to above to Plaintiff.

Dated: September 30, 2008

_____

The Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE